[No. 21462-4-I.   Division One.   August 7, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. THERESA G. ROBERTS, *Appellant*.

574

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association*, for appellant.

*Daniel B. Pope* and *Julin, Fosso, Sage, McBride*, for respondent.

WEBSTER, J.—Theresa G. Roberts received a 10–year sentence for her conviction of two counts of vehicular homicide. On appeal, she asserts that the reasons the court gave for her exceptional sentence are improper and that her sentence is clearly excessive. We affirm.

## FACTS

A serious auto accident occurred the evening of June 1, 1987, in which a car driven by Roberts struck an oncoming car head–on killing its driver and passenger. Roberts was with her roommate at home between 2 and 4 p.m. that same day and consumed one beer. Roberts' whereabouts until later that evening are unknown.

Roberts surfaced at the home of Deborah Wolf at 7 p.m. and appeared very excited and angry. Roberts wanted Wolf to loan her money. Roberts said she thought she was having withdrawal symptoms from cocaine. Roberts, a much larger woman than Wolf weighing 175 pounds, to Wolf's 115, bullied Wolf by putting her hands around Wolf's throat and told Wolf she was lucky she was a friend; otherwise Roberts would have choked her. Roberts squeezed Wolf's leg causing pain. Roberts also harassed Wolf's son by sitting on him

and growling at him. After drinking one beer Roberts took a second beer from Wolf's refrigerator and spilled most of it. Roberts took off her shirt and used it to clean up the spilled beer. Wolf gave Roberts another t–shirt because Roberts had stripped down to only her bra. Wolf refused to give Roberts more beer because she had spilled her second one. Wolf left Roberts alone for a moment; when she returned, she noticed Roberts had opened her purse. Wolf questioned Roberts about the purse, and Roberts became defensive. Roberts said, "why don't [you] frisk [me?]" Wolf asked her to leave and Roberts said, "[w]hy don't you make me leave?" Roberts went out the door saying she was going to get a gun and kill everyone in the county.

Roberts entered her car in front of Wolf's house, revved the motor, and shifted into reverse. She drove backward and knocked down a large sign supported by two four–by–four posts. At that point, Wolf called the county sheriff and said Roberts had gone "berserk." After her car became temporarily stuck in Wolf's garden, Roberts tried to knock over Wolf's mailbox. Wolf testified that Roberts was "roasting" her tires.

Wolf's nephew pulled into the driveway while Roberts maneuvered her car into various objects. Observing her erratic behavior he attempted to prevent Roberts from getting into Wolf's house. Roberts threatened him and said she had a knife in her pocket. Roberts finally left when Wolf told her the sheriff had been called.

Roberts sped away onto a busy street in front of Wolf's house and nearly caused an accident. One witness saw Roberts drive through a stop sign at a very busy intersection a short distance from Wolf's house. Minutes later, Roberts collided head–on with another car killing its two occupants. Roberts suffered relatively minor injuries which consisted of lacerations on her face, chest, and extremities.

Roberts was belligerent while being transported to a hospital. She continuously cursed the persons treating her and was combative in the emergency room as well.

Roberts' physician testified that he thought Roberts was intoxicated because he smelled alcohol on her breath. Police officers also smelled alcohol on Roberts' breath. Authorities drew some of Roberts' blood approximately 1 hour after the collision and detected .09 percent alcohol. The police recovered 10 beer containers in Roberts' car, 5 of which were open. Investigators detected no skid marks at the scene, indicating that neither car braked prior to the collision.

A jury found Roberts guilty of two counts of vehicular homicide. The court imposed an exceptional sentence of 120 months instead of the standard range of 31 to 41 months.

## DISCUSSION

The court calculated Roberts' standard sentencing range based on the two counts of vehicular homicide and a reckless driving conviction which Roberts had received less than 2 months earlier. In challenging her exceptional sentence Roberts argues that the reasons the court gave for imposing it were improper and not supported by the record.

█ Appellate review of an exceptional sentence is governed by statute. RCW 9.94A.210(4) states:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

First, we must determine if the trial court's reasons for the exceptional sentence are supported by the record under a clearly erroneous standard. *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986). Second, the trial court's reasons must, as a matter of law, justify the sentence. *Nordby,* at 518. To justify an exceptional sentence, the trial court must articulate a "substantial and compelling" reason which has not already been considered in computing the presumptive range for the offense. RCW 9.94A.120(2);

*Nordby,* at 518; *State v. Ratliff,* 46 Wn. App. 325, 332, 730 P.2d 716 (1986), *review denied,* 108 Wn.2d 1002 (1987).

The trial court enumerated four reasons justifying Roberts' exceptional sentence.

1. <u>Misdemeanor Driving Convictions Leading up to the Time of the Current Offense.</u>

Roberts received three negligent driving convictions within a 1¼-year period before the incident. On March 6, 1986, Roberts pleaded guilty to negligent driving after she lost control of her vehicle and hit a garage. On March 1, 1987, Roberts was convicted of negligent driving when she again lost control of her car and landed in a ditch. In this instance, the police tested her blood alcohol to be .08 percent. On March 25, 1987, Roberts was again convicted of negligent driving after the State reduced her original charge of driving while intoxicated. The record indicates that she appeared intoxicated and was argumentative with the officers.

█ Roberts argues that a court cannot use these three misdemeanor convictions to justify an exceptional sentence when the sentencing act forbids the trial court from using them to calculate the standard sentencing range. We disagree. A court may rely upon misdemeanor convictions to enhance a sentence even though those convictions may not be used to increase a defendant's offender score. *State v. Ratliff,* 46 Wn. App. 325, 730 P.2d 716 (1986), *review denied,* 108 Wn.2d 1002 (1987). In *Ratliff,* the court affirmed an exceptional sentence based solely upon a defendant's history of prior misdemeanor convictions. *Ratliff,* at 332–33. Ratliff was convicted of second degree malicious mischief for having damaged a police vehicle. *Ratliff,* at 326. The court found that the defendant's extensive history of misdemeanor convictions (several were for property destruction) "is the type of record that justifies treating him differently." *Ratliff,* at 332.

Roberts argues that the misdemeanors should not have been used to enhance her sentence in this case because the Sentencing Reform Act of 1981 specifically allows a court to

include certain serious traffic offenses[1] in a defendant's offender score. *See* RCW 9.94A.360(2). She deduces from this that the Legislature clearly intended courts not to consider negligent driving convictions when calculating a defendant's offender score or when imposing an exceptional sentence.

Roberts' argument is without merit. The fact that the Legislature allows a court to include certain misdemeanors in a defendant's offender score does not necessarily mean that the Legislature intended to prevent a court from considering other misdemeanors to impose an exceptional sentence. *Ratliff* specifically authorizes consideration of misdemeanors not already included in a defendant's offender score to justify imposing an exceptional sentence. As quoted in *Ratliff,* even the official comments to the sentencing guidelines observed that a court may consider prior misdemeanor convictions in arriving at an exceptional sentence. *Ratliff,* at 332. Here, the court specifically noted that the three negligent driving convictions established a pattern of incidents in which Roberts lost control of her vehicle—similar to the current offense. As in *Ratliff,* Roberts' similar past driving offenses constitute "substantial and compelling" reasons to justify an exceptional sentence. The trial court was justified in taking the convictions into account because they were not considered in computing her presumptive range. *See Nordby,* 106 Wn.2d at 518.

Roberts also disagrees with the court's observation that alcohol was related to these offenses. She maintains that the trial court violated the "real facts" doctrine which prohibits "considering unproven or uncharged crimes as a reason for imposing an exceptional sentence." *State v. McAlpin,* 108 Wn.2d 458, 466, 740 P.2d 824 (1987). RCW 9.94A.370(2) states,

---

[1]These offenses are: driving while intoxicated, physical control of vehicle while intoxicated, reckless driving, and hit and run of an attended vehicle. RCW 9.94A-.360(2); 9.94A.030(20)(a) (1987).

Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2) (c), (d), and (e).

In its oral decision here, the court stated, "this lady has built up a past record of alcohol–related convictions".

Roberts' argument lacks merit with respect to her March 1, 1987, conviction. The March 1, 1987, conviction for negligent driving included a notation that Roberts' blood had a .08 percent blood alcohol level. RCW 46.61.502(1) sets the blood alcohol limit at .10 percent for a person to be "under the influence of intoxicating liquor". The trial court properly considered this factor because Roberts' .08 percent blood alcohol level does not establish an element of driving while intoxicated. It merely shows that she drove with alcohol in her system when she was cited for negligent driving.

On the other hand, Roberts' argument is valid with respect to her March 25, 1987, conviction of negligent driving. The officer originally cited Roberts with DWI because she appeared intoxicated. No other information about Roberts' level of intoxication is known. In *State v. McAlpin, supra,* the court held that a sentencing court may not consider charges which do not result in a conviction. 108 Wn.2d at 466. Here, the evidence of alcohol related to the March 25 conviction consists primarily of a charge that did not result in a conviction. Unlike the .08 blood alcohol level in the earlier conviction, the officer's observation that she appeared intoxicated tends to establish an element of another crime. *See* RCW 46.61.502(3). Therefore, the trial court improperly considered Roberts' use of alcohol in this negligent driving conviction.

■ Roberts also argues that the trial court erred in relying on a 1982 DWI conviction which should have been "washed out" and not considered. The State concedes that the DWI is properly "washed out" under *State v. Herzog,*

48 Wn. App. 831, 834, 740 P.2d 380 (1987). Indeed, RCW 9.94A.360(2) requires that the trial court not consider the DWI conviction because Roberts was not convicted of a "serious traffic conviction" as defined in former RCW 9.94A.030(20)(a) for a period of more than 5 years[2] after the 1982 DWI conviction. The trial court here made no reference to the 1982 DWI conviction in its oral decision to impose an exceptional sentence. However, a review of Roberts' driving record including the DWI conviction was briefly mentioned in findings of fact which the court entered following trial. *Herzog* specifically requires that a "washed out" conviction be completely removed from consideration. Thus, the trial court should not have mentioned or considered the DWI conviction in its discussion of Roberts' driving record.

2. Roberts' Disregard of the Effect of Abuse of Alcohol and Drugs.

Roberts next argues that the second factor pronounced by the court to justify her sentence, that she had shown a callous disregard for the consequences of her alcohol and drug use, is not supported by the facts because she was found with no drugs in her system after the accident. We disagree.

Roberts has a substantial history relating to drug abuse: a 1984 conviction for growing marijuana, her own admission that she had used and abused drugs in the past,[3] a police report in one of her negligent driving charges stating that she possessed an unlabeled container of prescription drugs, her statement to Wolf on the evening of the collision that she was having withdrawal symptoms from her use of cocaine, and her admission made to a witness that she had

---

[2]Roberts received a "serious traffic conviction"—*i.e.*, reckless driving—5 years 2⅔ months after her DWI conviction.

[3]The sentencing report indicated that Roberts admitted using "marijuana, mushrooms, hallogenics [*sic*], and cocaine."

obtained and was dealing cocaine and marijuana while in jail.[4]

Roberts correctly points out that no drugs were found in her system after the crash. A blood test disclosed only alcohol and nicotine in her blood. However, we find no significance in the fact that Roberts was abusing only alcohol at the time of this incident. The critical theme emphasized by the court here is *substance abuse.* Several witnesses testified that Roberts was belligerent and berserk both before and after the incident. Her bizarre behavior included, for example, removing her shirt to mop up spilled beer in front of a little boy, driving erratically, and destroying property. This behavior is consistent with the traits of a person abusing substances. She appeared intoxicated to Wolf's nephew and her attending physician. She had .09 percent blood alcohol. She drove with numerous open containers of alcohol in her vehicle. We find ample evidence in the record supporting the court's finding.

Roberts objects to the court's reference to her previous treatment for alcohol abuse. However, we believe this fact to be relevant because it tends to indicate that despite her previous treatment she continues to disregard the seriousness of the effects of drugs and alcohol.

█ Finally, Roberts argues that evidence of her alcohol consumption in the present case should not have been considered because this fact was necessarily considered in determining her presumptive range. *See Nordby,* 106 Wn.2d at 518. We believe the trial court properly considered this fact, and a case in point supports this conclusion. *State v. Weaver,* 46 Wn. App. 35, 729 P.2d 64 (1986), *review denied,* 107 Wn.2d 1031 (1987). In *Weaver,* the

---

[4]Roberts has not argued on appeal that the trial court violated the real facts doctrine when it considered this history of drug use. Nevertheless, we perceive no violation because none of the above facts establish *all* the elements of additional crimes. *See* RCW 9.94A.370(2). Roberts' admissions alone are insufficient to establish a crime, and Roberts' possession of what she claims were drugs prescribed by a doctor is not a fact that establishes the elements of an additional crime.

court stated that a valid reason which justifies the imposition of an exceptional sentence is a defendant's 'calloused disregard for the consequences of chemical use". *Weaver,* at 43 (quoting *State v. Loitz,* 366 N.W.2d 744, 746 (Minn. Ct. App. 1985)). The record supported the conclusion that the defendant disregarded the seriousness of substance abuse because the defendant had a history of alcohol abuse, had disdained treatment in the past, and had consumed a great deal of alcohol when the offense was committed. *Weaver.* Although the court observed that the defendant's intoxication at the time of the offense is an invalid factor in itself to justify an exceptional sentence, the court considered the consumption when it found that the defendant had a callous disregard for the effects of alcohol. *See Weaver,* at 43. The reasoning of *Weaver* applies here. Roberts' alcohol consumption at the time of the vehicular homicides was relevant to show that her callous disregard for the effects of substance abuse *related* to the current offense. Obviously, if the current offense had nothing to do with drinking and driving, her history of substance abuse would have little relevance to her sentence. Thus, the trial court did not err in considering this fact in imposing her sentence.

3. Roberts' Likelihood of Reoffending.

The third reason relied on by the court in entering Roberts' exceptional sentence was Roberts' likelihood of reoffending. Roberts contends that this conclusion is unsupported by the record. We disagree.

First, the trial court noted that frequent adverse contacts with law enforcement had not deterred Roberts from committing the current offenses. Not counting her reckless driving conviction[5] which she received less than 2 months before the incident here, Roberts received three negligent driving convictions within a space of 1¼ years preceding this crime. All three involved losing control of her vehicle.

---

[5]This conviction may not be considered because it was already used in determining Roberts' offender score. *See State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821 (1985).

Therefore, the trial court had before it substantial evidence that Roberts repeatedly broke the law indicating that she would continue.

The court's second observation relating to Roberts' likelihood of reoffending was that Roberts was not remorseful after the incident. This finding is also supported by substantial evidence. She laughed when asked by a jail inmate about the accident. She told the inmate that the other people in the crash "don't feel any pain" (presumably referencing the fact that they are dead). She said that all she could "give a shit about was her dog."[6]

Third, the court referenced the fact that Roberts said she believed she had not intentionally committed a crime.

Fourth, Roberts had received alcohol treatment in the past, yet continued to drive a car with alcohol in her system. This further supports the conclusion that she is not amenable to treatment and will likely reoffend.

We find that the four above factors tend to establish a strong probability that Roberts will reoffend. Under the clearly erroneous test, we cannot say that the trial court's finding here is unsupported by the record.

Roberts cites *State v. Holyoak,* 49 Wn. App. 691, 745 P.2d 515 (1987) to stand for the proposition that past convictions do not indicate future dangerousness. *Holyoak* is clearly distinguishable from the present case. In *Holyoak,* the trial court based its conclusion that the defendant would be dangerous in the future on one prior related conviction. *Holyoak,* at 696. Here, Roberts' criminal history that was not used to calculate her offender score consisted of *three* prior related convictions. In addition, the trial court relied on more than just her past convictions when it found it likely that she would reoffend. As stated above, Roberts never admitted that she committed a crime. She had no remorse for the victims after the crime. She continued to abuse substances despite the fact that she had been

---

[6]Roberts' dog died in the collision.

treated for alcohol abuse in the past. These facts clearly support the court's finding.

In entering this finding, the court also mentioned that, while Roberts was in jail, she threatened a witness over the telephone. This possible threat may constitute intimidating a witness, or telephone harassment. RCW 9A.72.110; RCW 9.61.230. The court's reliance on it, however slight, violates the real facts doctrine. RCW 9.94A.370; *see also State v. Ratliff,* 46 Wn. App. 466, 469, 731 P.2d 1114 (1987). Thus, the trial court improperly considered Roberts' threat of a witness. However, we conclude that the remaining facts constitute substantial evidence and support the court's finding that Roberts will likely reoffend.

4. Roberts' Especially Culpable State of Mind.

■ The trial court's fourth reason for imposing an exceptional sentence was that her mental state at the time of the offense was especially culpable. Roberts argues that this consideration constitutes a violation of the real facts doctrine. Roberts relies on *State v. Crutchfield,* 53 Wn. App. 916, 771 P.2d 746 (1989), but fails to distinguish *State v. Nordby,* 106 Wn.2d 514.

In *Crutchfield,* the defendant was charged with the intentional crimes of first and second degree murder. 53 Wn. App. at 920. The jury convicted the defendant of a lesser included crime of manslaughter but not the crimes with the higher mental state of intent. *Crutchfield.*

In contrast, *Nordby,* as here, involved a defendant charged with a crime requiring a mental state of recklessness or intoxication. No higher crime was charged. In affirming the trial court's imposition of an exceptional sentence, the Supreme Court in *Nordby* held that the trial court properly considered the fact that the defendant intentionally grabbed a car's steering wheel to hit a victim. *Nordby,* at 518–19. Here, Roberts violently destroyed property with her car prior to the collision. She acted belligerently both before and after the crime. A witness heard Roberts say she was going to get a gun and kill everyone in the county minutes before the collision. Experts testified

that no skid marks were found which suggests that Roberts deliberately drove into the oncoming car. Thus, the evidence seemed to indicate that Roberts had a more culpable mental state than recklessness. Clearly, *Nordby* allows a court to consider facts which tend to establish that Roberts deliberately committed vehicular homicide despite the real facts doctrine.

■ Finally, Roberts contends that her sentence of 120 months is clearly excessive. *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986) held that the standard of review when a sentence is attacked as clearly excessive is abuse of discretion. Abuse of discretion exists only if no reasonable judge would have imposed the sentence of the trial court. *See State v. Nelson,* 108 Wn.2d 491, 504–05, 740 P.2d 835 (1987). Roberts argues that she received a much higher sentence than she would have, had the court calculated many of her inadmissible convictions in her sentencing score. This argument seems to ignore the fact that the Legislature has specifically empowered the court to impose exceptional sentences. RCW 9.94A.120(2). Roberts would have this court limit exceptional sentences to a sentence range calculated by using all of a defendant's convictions— ones valid under the sentencing statute and otherwise invalid convictions as well. No authority supports this argument.

■ Roberts' argument might have merit had her prior convictions been the only factor warranting an exceptional sentence. This is not the case, however. The trial court may impose an exceptional sentence "if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). One of the purposes of the sentencing reform act is to "[p]romote respect for the law by providing punishment which is just". RCW 9.94A.010(2). Here, Roberts deliberately and repeatedly flouted the law leading up to and after the crime. She regularly received driving citations. She was driving on the date of the accident with

several open containers of alcohol in her car as well as alcohol in her system. She said she was going to get a gun and kill everyone in the county. After the accident, a volunteer fire fighter asked for her name and Roberts replied, "[n]o way, fucker." She was belligerent in the hospital while being treated. The purpose of promoting respect for the law is accomplished by imposing an exceptional sentence here.

When an appellate court invalidates some of the reasons given by the trial court for imposing an exceptional sentence, remand is not always necessary. *See State v. Fisher,* 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987); *see also State v. Dunaway,* 109 Wn.2d 207, 219–20, 743 P.2d 1237, 749 P.2d 160 (1987); *State v. Crutchfield, supra.* The standard to be used when determining whether a case should be remanded for resentencing is if the appellate court deems the invalidated facts to be facts upon which the trial court placed considerable weight in determining the sentence, then remand is necessary. *Fisher.* Stated another way, if the valid reasons relied on by the sentencing judge are sufficiently significant to warrant an exceptional sentence, remand may be unnecessary. *Fisher,* at 429.

Here, the trial court improperly considered some facts and a prior conviction when it imposed her exceptional sentence: (1) a 1982 DWI conviction which was "washed out" under RCW 9.94A.360(2); (2) her alcohol consumption in her March 25, 1987, negligent driving conviction which was improper under the real facts doctrine; and (3) her threat of a witness, also improper under the real facts doctrine.

Even with these facts and the conviction removed from the trial court's consideration, there appear to be sufficient and substantial reasons upon which the court based the exceptional sentence. All four reasons which the court enumerated are supported by valid facts: (1) Roberts' history of driving misdemeanors, (2) her substance abuse, (3) her likelihood of reoffending, and (4) her culpable state of mind. Moreover, the trial court's oral decision shows that little weight was placed by the judge on the improper facts

and conviction. Specifically, the court made no mention of Roberts' DWI conviction in the oral decision. He simply said "a past record of alcohol–related convictions". The court made no reference to Roberts' threat of a witness in the oral decision.

■ Finally, Roberts argues that the court improperly imposed the maximum sentence possible for her crime. She argues that the statutory maximum sentence must be reserved only for the quintessential crime. Her crimes are, in her opinion, not among the worst possible cases of vehicular homicide. We disagree. Roberts' case is among the worst types of vehicular homicides. She was drinking and driving after she had been convicted of numerous driving offenses in the past. Her attitude was "kill everyone in the county." The facts seemed to indicate that she had a higher mental state than just recklessness. She showed no remorse toward the victims after the crime.

The trial court did not abuse its discretion in imposing the sentence here. Each of the factors relied on by the court are supported by substantial evidence and establish a substantial and compelling reason to impose a 120–month exceptional sentence.

We affirm.

GROSSE, A.C.J., and FORREST, J., concur.

Review denied at 113 Wn.2d 1026 (1989).