[No. 13166-8-II.  Division Two.  March 21, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. CURTIS H. DUNIVAN, *Appellant.*

*John A. Hays,* for appellant (appointed counsel for appeal).

*C.C. Bridgewater, Jr., Prosecuting Attorney,* and *Douglas S. Boole, Deputy,* for respondent.

PER CURIAM.—Curtis H. Dunivan appeals an exceptional sentence he received following a conviction for vehicular homicide. The legislatively established standard range was 21 to 27 months in prison. The Cowlitz County Superior Court sentenced defendant to serve 39 months. This appeal was argued pursuant to a motion for accelerated review, RAP 18.15. The Commissioner referred it to a panel of judges. We vacate the exceptional sentence.

The court gave the following reasons for the exceptional sentence:

### I. FINDINGS OF FACT

1. That the defendant has two prior alcohol related driving offenses, a physical control in 1979 and a driving while intoxicated in 1983.

2. That the defendant ran from the scene of the accident without checking on the welfare of the injured person.

3. That the defendant never attempted to summon aid for the injured person.

## II. CONCLUSIONS OF LAW

1. That the defendant's history showed a careless disregard for the risks involved in drinking and driving.

2. That the defendant's history showed a careless disregard for the rights and safety of others.

3. That the defendant's conduct after the accident showed a total disregard for the deceased and only a concern for his own personal welfare.

■ The record supports the findings of fact. They are not clearly erroneous and are valid. *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1980). The next question on review is whether the court's reasons justify a departure from the standard sentencing range. That is a question of law to be decided independently by this court. *Nordby.* RCW 9.94A.120(2) specifies that the court's reasons must be "substantial and compelling."

■ The court's second and third findings of fact do not support the sentence because they speak of conduct that establishes the elements of another crime. This violates the "real facts" policy:

> The sentencing reform act clearly prohibits reliance on real facts that establish elements of additional crimes to go outside the presumptive range, except upon stipulation. RCW 9.94A-.370. There was no stipulation here. Defendants will be held accountable for those crimes of which they are convicted, but not for crimes the prosecutor could not, or chose not to, prove.

*State v. Harp,* 43 Wn. App. 340, 342–43, 717 P.2d 282 (1986). *Accord, State v. McAlpin,* 108 Wn.2d 458, 740 P.2d 824 (1987); *State v. Ratliff,* 46 Wn. App. 466, 731 P.2d 1114 (1987); *State v. Swanson,* 45 Wn. App. 712, 714, 726 P.2d 1039 (1986).

The additional crime here is failure to remain at the scene of an injury accident. As set forth in RCW 46.52-.020(1) and (3), failure to remain is committed when the driver of any vehicle involved in an accident resulting in

injury to or the death of another fails to (a) stop immediately at the scene and (b) remain to give information and render assistance. The assistance contemplated by the statute is that the driver "shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment . . .". RCW 46.52.020(3). The court's second and third findings clearly indicate its reliance on facts that make up this additional crime, and defendant did not stipulate to consideration of those facts. Those reasons are invalid.

The remaining reason has two aspects. First, the court found that defendant has two prior alcohol–related driving offenses, a physical control in 1979 and a DWI in 1983. Second, the court therefore concluded that defendant showed a "careless [*sic*] disregard" for the safety and rights of other users of the highway when he again drove, on this third occasion, while under the influence of alcohol. As a matter of law, one's recidivism in driving under the influence despite a conspicuous history of substance abuse and prior opportunities for rehabilitation can display a *callous* disregard for the consequences of such abuse. *State v. Roberts*, 55 Wn. App. 573, 583, 779 P.2d 732 (1989); *State v. Weaver*, 46 Wn. App. 35, 43, 729 P.2d 64 (1986), *review denied*, 107 Wn.2d 1031 (1987).

With this background, the focus is purely legal: Can the court impose an exceptional sentence on the basis of prior offenses that would be included in the offender score, and reflected in the standard range, except for the fact that they occurred too long ago and, therefore, "wash out" of consideration?

In computing the offense score for vehicular homicide, the court counts one point for each prior adult "serious traffic offense." RCW 9.94A.360(12). DWI and actual physical control of a motor vehicle while intoxicated are "serious traffic offenses." RCW 9.94A.030(23)(a). However, such offenses shall not be included in the offender score if the

offender has spent more than 5 years in the community since his or her last convictions for such an offense. RCW 9.94A.360(2). Thus, in this case defendant's prior serious traffic offenses "washed out" of the offender score because more than 5 years had elapsed.

The State argues that the court could rely on them, nonetheless, under the rationale that permits consideration of a string of misdemeanors or pre–age–15 felonies, neither of which kind of offense is reflected in a person's offender score, when they reveal the offender to be a significantly more active criminal than the score itself suggests. *See State v. McAlpin, supra; State v. Olive,* 47 Wn. App. 147, 152, 734 P.2d 36, *review denied,* 109 Wn.2d 1017 (1987); *State v. Ratliff, supra.* As stated in *McAlpin:*

> One of the overriding purposes of the sentencing reform act is to ensure that sentences are proportionate to the seriousness of the crime committed and the defendant's criminal history. RCW 9.94A.010(1). This purpose would be frustrated if a court were required to blind itself to a significant portion of a defendant's juvenile criminal record. We find no justification for the defendant's argument. Such an interpretation of the sentencing reform act would operate to erase from the record the true circumstances of an offender's past, thus precluding the trial court from evaluating what might be one of the most significant aspects of an offender's personality. The sentencing reform act does not indicate that the Legislature intended to establish that all criminal convictions prior to age 15 would be purged from the ken of the sentencing judge. The trial court here did not err in concluding that a defendant who has amassed an extensive and recent record of pre–age–15 felonies is significantly different from a defendant who has no record at all. Society is entitled to view the long–term repeater of crimes from an early age as a greater threat and as requiring longer institutional supervision than one whose criminal proclivities are not as deeply ingrained. The court also correctly concluded that the defendant here would not be doubly penalized if these crimes were considered in imposing an exceptional sentence, since they are not part of the standard range calculation.

108 Wn.2d at 464.

We agree that the court was entitled to consider the prior offenses that had washed out of the offender score. It should make no difference why the prior offenses are not factored into the score, *i.e.,* whether they are omitted

because they are felonies committed before the offender attained age 15, as in *McAlpin,* or because they are serious traffic offenses committed more than 5 years ago. Either way, the Legislature's apparent intent was that the offender score would reflect only fairly recent crimes, suggestive of a current criminal frame of mind, and not stale crimes giving rise to the presumption that the offender paid his debt to society, has been free of crime since then, and should be allowed to get on with his life. This is referred to as the "decay" policy. *See* D. Boerner, *Sentencing in Washington* § 5.6(d), (e) (1985). Notwithstanding the "decay" policy, we see no reason why the *McAlpin* analysis should not apply here and permit consideration of convictions that have washed out.[1]

Although the sentencing court was entitled to consider the old convictions in this case, we must still decide if the court properly concluded that they, together with other facts about defendant's background and the manner in which he drove, amounted to a callous disregard of the safety of others and, thus, formed a valid ground for the exceptional sentence. We hold that the facts do not elevate this crime above the ordinary incident of vehicular homicide, for which the Legislature has prescribed a standard range sentence. The bare fact that defendant once again drove under the influence, after a period of 5 years, does not demonstrate a callous disregard, as do the extreme facts in *Roberts* and *Weaver.*

In *Roberts,* a vehicular homicide case, the defendant had a "substantial history relating to drug abuse"—she had a prior conviction for growing marijuana, she admitted prior use of mushrooms, hallucinogenics, and cocaine, she was in withdrawal from cocaine on the night of her collision, she obtained and dealt cocaine and marijuana in jail; moreover,

---

[1]In so holding, we do not mean to suggest that in every case, the court must— or even should—consider "washed out" convictions, but only that such consideration is permissible when, as here, the old convictions demonstrate a deeply ingrained kind of behavior that the present crime suggests has been revived, to the peril of society.

she drove erratically and at high speed before the collision, she had a prior negligent driving violation when her blood alcohol level was .08, she drank enough beer to produce a .09 blood alcohol level on the night of the collision, and she exhibited other "bizarre" and "berserk" behavior. 55 Wn. App. at 576–77, 581–83.

Similarly, in *Weaver,* the defendant

> had a public history of alcohol abuse, had disdained any rehabilitation, was driving without liability insurance and in contempt of a court order. His level of intoxication [.20] was twice the amount necessary to affect his driving skills, he was driving at high speed around a dangerous curve . . ..

46 Wn. App. at 43.

In contrast to the facts in *Roberts* and *Weaver* that reflect a long–term pattern of alcohol or drug abuse by both defendants and show a callous disregard for others, this record shows simply that defendant became intoxicated and then drove. He drank beer on the afternoon of May 8, 1989, while working on his truck, and later drank a vodka screwdriver at a neighbor's house. Around midnight, he left the neighbor's house in the neighbor's car, stopped for a stop sign at an intersection before entering an arterial, looked both ways, proceeded into the intersection while signaling for a left turn, and felt the impact of a motorcycle hitting the driver's side of the car. He failed to see the motorcycle coming. The neighbor, a passenger, corroborated this account. Defendant's blood alcohol level was .19. He committed the crime of vehicular homicide by driving under the influence of alcohol and proximately causing the death of another, RCW 46.61.520(1). But his conduct did not substantially exceed that necessary to satisfy the elements of the crime. The record is empty of any other evidence that would combine with his prior driving record to establish a callous disregard for the safety of others. The criminal history alone is not enough. *See State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985).

The sentence is vacated. The case is remanded for imposition of a sentence within the standard range.

Reconsideration denied May 9, 1990.