[No. 30835-1-I.   Division One.   August 2, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. PHILLIP NOAH OKSOKTARUK, *Appellant.*

*Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

PEKELIS, J. — Phillip Oksoktaruk appeals from the entry of a judgment following his guilty plea on separate counts of vehicular homicide and vehicular assault. Oksoktaruk contends that the trial court erred in imposing an exceptional sentence above the standard range. We affirm.

I

The relevant facts in this case are summarized in the trial court's written findings, which state:

1. The defendant's criminal history includes a 1976 burglary, a 1985 driving while intoxicated, and a 1987 attempted burglary.

2. On the night of February 7, 1992, while operating a motor vehicle, the defendant had a blood alcohol level of at least .22.

3. While under the influence of alcohol on that night, the defendant drove his vehicle at a very high rate of speed, in the rain, with his headlights off, on SR 202, a busy road, through the middle of the town of Snoqualmie. Traffic was heavy; the high school basketball game had just ended.

4. Before the collision, the defendant's driving was so poor that he nearly collided with other vehicles driven lawfully on the roadway.

5. In the town of Snoqualmie, the defendant struck an automobile driven by Russell Beals in which Mr. Beal's [sic] wife, Ruth, was a passenger. The Beals' car was nearly torn in half by the collision. Mrs. Beals was killed; she died before the couple could be removed from their car. Mr. Beals was seriously injured (his hip was crushed).

Based on these facts, the trial court determined that an exceptional sentence was warranted for the following reasons:

1. The defendant's offender score in this case is "1". The 1976 burglary and the 1985 DWI do not count toward his offender score, per RCW 9.94A.360(2) . . . Nevertheless, this prior criminal behavior constitutes an aggravating circumstance in this case; see State v. McAlpin, 108 Wn.2d 458, 740 P.2d 824 (1987); State v. Dunivan, 57 Wn. App. 332, 788 P.2d 576 (1990).

2. Unlike the usual situation where a defendant has criminally injured more than one victim, this defendant's offender score for each count is not enhanced by the count which names another victim, according to the provisions of RCW 9.94A.400-(1)(a). Yet, as that very provision anticipates, in this case the serious injury to Mr. Beal (Count II) constitutes an aggravating

circumstance which warrants a period of confinement greater than the standard range on Count I.

3. The defendant's blood alcohol level of .22, which is greater than twice the amount required to constitute driving while intoxicated in this state, is an aggravating circumstance in this case. *See State v. Weaver*, 46 Wn. App. 35, 729 P.2d 64 (1986)[, *review denied*, 107 Wn.2d 1031 (1987)].

4. The driving demonstrated by the defendant in this case — a high rate of speed, on a crowded street, in the middle of town, on a rainy night, without headlights, preceded by other near-collisions — is far more egregious than the "typical" driving which leads to a vehicular homicide, and constitutes another aggravating circumstance. *See State v. Weaver, supra.*

. . . .

7. [T]his sentence will promote the objectives of the Sentencing Reform Act, the ends of justice, and respect for the law.

The court sentenced Oksoktaruk to 48 months and ordered him to pay $127,326.47 in restitution. The standard range was 26 to 34 months for the vehicular homicide conviction and 6 to 12 months for the vehicular assault. Oksoktaruk had requested a 26-month sentence; the State had recommended a sentence of 34 months.

## II

Oksoktaruk contends that none of the trial court's reasons support the imposition of an exceptional sentence. He first argues that the trial court's reliance on his 1976 burglary and 1985 DWI convictions, his egregious driving, and the high degree of intoxication constitute use of the aggravating factor of callous disregard which, under *State v. Bolton*,[1] is no longer a legally valid factor. He also claims that the court's remaining reason, that the crime involved multiple victims, is not exceptional and does not justify a departure from the standard range.

In reviewing an exceptional sentence, we determine whether the trial court's reasons are supported by evidence in the record and whether they are "substantial and compelling" enough to merit deviation from the standard range as a matter of law. RCW 9.94A.210(4)(a); *State v. Allert*, 117 Wn.2d

[1] 68 Wn. App. 211, 842 P.2d 989 (1992).

156, 163, 815 P.2d 752 (1991). Here, the court's factual findings regarding (1) Oksoktaruk's criminal history, (2) high blood alcohol level, (3) dangerous driving, and (4) the presence of multiple victims have ample support in the record. Thus, the critical issue is whether these findings support the imposition of an exceptional sentence as a matter of law.

In its written findings, the trial court expressly relied on *State v. Weaver*, 46 Wn. App. 35, 729 P.2d 64 (1986), *review denied*, 107 Wn.2d 1031 (1987) as authority for departing from the standard range. In *Weaver*, Division Three of this court upheld an exceptional sentence where the defendant had a public history of alcohol abuse, had disdained any rehabilitation, was driving without liability insurance and in contempt of a court order, had a blood alcohol level of .20, and was driving at high speed around a dangerous curve. The court apparently reasoned that: (1) the defendant's history of chemical abuse and disregard for its effects was a valid aggravating factor,[2] and (2) the defendant's conduct "was more onerous" than what the Legislature contemplated when setting the standard range. *Weaver*, 46 Wn. App. at 43.

Although numerous cases have approved of the analysis in *Weaver*, the decisions have not been uniform in their application of the court's reasoning. Some have treated *Weaver* strictly as a callous disregard case, *see State v. Roberts*, 55 Wn. App. 573, 779 P.2d 732, *review denied*, 113 Wn.2d 1026 (1989); others have apparently viewed *Weaver* as a callous disregard case with the "more onerous than typical" rationale as one element of the analysis, *see State v. Dunivan*, 57 Wn. App. 332, 337, 788 P.2d 576 (1990). It also has been cited to support a future dangerousness rationale with callous disregard as one element of the analysis, *see State v. Davis*, 53 Wn. App. 306, 315, 766 P.2d 1120, *review denied*, 112 Wn.2d 1015 (1989); *State v. Thomas*, 57 Wn. App. 403, 408, 788 P.2d 24, *review denied*, 115 Wn.2d 1003 (1990); *State v. Campas*, 59 Wn. App. 561, 565, 799 P.2d 744 (1990), *remanded*, 118 Wn.2d

---

[2] Relying on *State v. Loitz*, 366 N.W.2d 744, 746 (Minn. Ct. App. 1985).

1014 (1992); while still others have used *Weaver* primarily for the "more onerous than typical" rationale, *see State v. Perez*, 69 Wn. App. 133, 139, 847 P.2d 532 (1993), petition for review to be considered on September 1, 1993.

Recently, in *State v. Bolton, supra,* a divided panel of this court examined the continuing validity of callous disregard after *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991), in which the Supreme Court held that future dangerousness may only be used as an aggravating factor in sexual offense cases. In a split opinion, Judge Forrest, writing for the majority, reasoned that a finding of callous disregard was the same as a finding that the defendant posed a future danger to society. He thus concluded that *Barnes* had effectively overruled *Weaver* and that callous disregard may no longer be used to impose an exceptional sentence in a vehicular homicide case. *Bolton*, 68 Wn. App. at 215.

Oksoktaruk argues that the trial court's findings regarding his criminal history, dangerous driving, and high blood alcohol level implicate the holding in *Bolton*. We disagree. On their face, the court's reasons do not constitute a finding of callous disregard and there is no evidence in the court's oral or written findings and conclusions that it viewed them as such. Rather, the court's findings reflect a reliance on two bases which are analytically distinct from callous disregard: (1) prior criminal acts which are not reflected in the defendant's offender score, and (2) conduct which is more onerous than in the typical vehicular homicide, *i.e.*, the *Weaver* court's alternative rationale.

With respect to the first reason, the trial court determined that Oksoktaruk's 1976 burglary and 1985 DWI convictions, both of which "washed out" under RCW 9.94A.360(2),[3] con-

---

[3]RCW 9.94A.360(2) provides in part: "Class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement . . . or entry of judgment and sentence, the offender had spent *five consecutive years* in the community without being convicted of any felonies. Serious traffic convictions shall not be included in the offender score if . . . the offender spent *five years* in the community without being convicted of any serious traffic or felony traffic offenses". (Italics ours.)

stituted an aggravating circumstance, citing *State v. McAlpin*, 108 Wn.2d 458, 740 P.2d 824 (1987) and *State v. Dunivan, supra*.

In *McAlpin*, the trial court imposed an exceptional sentence following the defendant's guilty plea to first degree robbery based on the defendant's prior juvenile convictions, none of which could be factored into his offender score. *McAlpin*, 108 Wn.2d at 463 (citing former RCW 9.94A.030(8)). The court affirmed the trial court's reliance on these facts as a basis for an exceptional sentence, stating that:

> [s]ociety is entitled to view the long-term repeater of crimes from an early age as a greater threat and as requiring longer institutional supervision than one whose criminal proclivities are not as deeply ingrained.

*McAlpin*, 108 Wn.2d at 464; *accord, Dunivan*, 57 Wn. App. at 337 n.1 (consideration of washed-out convictions at sentencing permissible where the convictions "demonstrate a deeply ingrained kind of behavior that the present crime suggests has been revived . . .").

Here, the trial court properly relied on Oksoktaruk's uncounted criminal convictions to enhance his sentence. The convictions demonstrate Oksoktaruk's far-reaching history of criminal activity which merits treating him differently from defendants with similar offender scores. Moreover, the convictions are clearly relevant to the instant offense as Oksoktaruk himself admitted in his presentence interview with the Department of Corrections.[4] Accordingly, the trial court did not err in determining that Oksoktaruk's two prior convictions constituted an aggravating factor.

The trial court also based the exceptional sentence on Oksoktaruk's high blood alcohol level and his egregious driving. With respect to the latter reason, the court specifically

---

[4]The Department of Corrections report states, in part:

"[Mr. Oksoktaruk] told me that he started drinking at the age of 19, usually beer, and it was about two or three times per week. His consumption gradually increased over time. He said that *all of his legal problems* (three felony convictions) were as a result of alcohol." (Italics ours.)

noted that Oksoktaruk was traveling at a high rate of speed, on a crowded street, in the middle of town, on a rainy night, without headlights, and nearly collided with several other vehicles before the accident.

These facts are strikingly similar to those in *State v. Perez*, *supra*, a Division Two case decided after the parties' briefs herein were submitted. In *Perez*, the court affirmed an exceptional sentence following the defendant's guilty plea on a charge of vehicular homicide where the defendant (1) had an unusually high blood alcohol level (.27), (2) drove at very high speeds at night with his headlights deliberately turned off, (3) weaved in and out of the oncoming lane, and (4) struck the victim's van head on in the opposite curb lane.[5] *Perez*, 69 Wn. App. at 138. Noting that the *Weaver* court's "more onerous (or egregious) than typical" rationale remained analytically sound after *Barnes*, the court concluded:

> First, Perez's conduct was so egregious that it was not necessarily considered in setting the range for this offense. Second, the egregious circumstances of Perez's violation of the law substantially and compellingly distinguish his violation from other vehicular homicides.

(Footnote and citations omitted.) *Perez*, 69 Wn. App. at 139.

We agree with the *Perez* court that the "more onerous than typical" rationale is a valid aggravating factor, and we further conclude that the use of that factor here was proper. Oksoktaruk's high blood alcohol level, over twice the legal limit of intoxication, and egregious driving justify the trial court's decision to treat him differently than the typical defendant who becomes intoxicated and then drives.

Finally, Oksoktaruk challenges the trial court's remaining reason in support of the exceptional sentence, that the crime involved multiple victims.

---

[5] Although acknowledging *State v. Bolton* in a footnote, the court also considered the fact that "Perez's previous convictions for driving while intoxicated and the related court appearances and court orders, including the order to avoid alcohol, put him on extraordinary notice of the illegality and potential hazards of his actions." *Perez*, 69 Wn. App. at 138.

■ RCW 9.94A.400(1)(a)[6] states, in part, that for purposes of calculating an offender score in sentencing, current offenses which "encompass the same criminal conduct" will be counted as one offense. In order to qualify as same criminal conduct, two crimes must, *inter alia*, involve the same victim except in cases of vehicular assault or vehicular homicide where multiple victims occupied the same vehicle. Although in such instances two crimes could encompass the same criminal conduct, the sentencing court nonetheless may consider the fact of multiple victims as an aggravating circumstance and impose an exceptional sentence.

Oksoktaruk contends that RCW 9.94A.400(1)(a) is ambiguous and violates equal protection, arguing that the statute will lead to disparate sentencing. To illustrate, Oksoktaruk claims that two defendants convicted of two counts of vehicular homicide and each having offender scores of zero could be sentenced to completely different terms: one could receive a sentence within the standard range, the other a sentence up to the statutory maximum, as an exceptional sentence.

Recently, in *State v. Danis*, 64 Wn. App. 814, 822, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992), we observed that the exception in RCW 9.94A.400(1)(a) to the same victim rule derives from a legislative determination concerning relative culpability:

> [T]he classification represents an intuitive feeling that one is less culpable in hitting one car, even though two victims are in the car, than in hitting two cars or a car and a pedestrian or

---

[6]RCW 9.94A.400 provides in part:

"(1)(a) . . . [W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. *This definition does not apply in cases involving vehicular assault or vehicular homicide if the victims occupied the same vehicle. However, the sentencing judge may consider multiple victims in such instances as an aggravating circumstance under RCW 9.94A.390.*" (Italics ours.)

two pedestrians, particularly since pedestrians are considered more vulnerable than occupants of a vehicle.

However, the Legislature's reliance on this determination for offender score purposes does not preclude it from authorizing the trial court to consider multiple victims as an aggravating factor in appropriate circumstances. Such a scheme clearly advances the Sentencing Reform Act of 1981's (SRA) purpose of ensuring that punishment is proportionate to the seriousness of the individual offense. RCW 9.94A.010(1).

■ Moreover, the fact that disparate sentencing may result is not unique to RCW 9.94A.400(1)(a). Under the SRA, the trial court *may*, in the exercise of its discretion, determine that an exceptional sentence should be imposed in a particular case. There is no constitutional requirement, however, that defendants convicted under *similar* circumstances in *other* cases must also receive an exceptional sentence, let alone one of the same duration. In short, sentencing disparities between similar crimes do not implicate equal protection. *Cf. State v. Clinton*, 48 Wn. App. 671, 678-81, 741 P.2d 52 (1987) (equal protection guaranty is implicated where disparate sentences imposed on *codefendants* who committed the *same* crimes).

In exercising its discretion here, the trial court properly relied on the presence of multiple victims to enhance Oksoktaruk's sentence. The court found that Oksoktaruk, after narrowly missing several other cars, smashed into the Beals' vehicle, killing Ruth Beals, seriously injuring her husband, and sending shock waves through their community. These facts constitute a substantial and compelling basis for departing from the standard range.

In sum, we hold that all of the trial court's reasons are supported by the record and valid as a matter of law. We thus affirm Oksoktaruk's exceptional sentence.

WEBSTER, C.J., and COLEMAN, J., concur.