[No. 22784-0-I.   Division One.   July 30, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM
VICTOR SMITH, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Raymond C. McFarland, Deputy,* for respondent.

BAKER, J.—William Victor Smith appeals the trial court's imposition of an exceptional sentence, following his conviction of assault in the second degree while armed with a deadly weapon, in violation of former RCW 9A.36.020(1)(b) and (c) and RCW 9.94A.125. Pursuant to the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, Smith's criminal history established an offender score of "2" with a standard presumptive sentence range of 24 to 26 months in prison. The court imposed a sentence of 90 months of confinement. We affirm.

## I

Smith pleaded guilty, agreeing to allow the court to consider the certification for determination of probable cause to determine the factual basis for the plea. As recited in the certification, the facts are that the victim was shot in the head by a sniper as he and his wife were driving in their pickup truck. The police talked to Smith as one of the residents of an apartment building from which the bullet could have been fired. After an initial contact with Smith, an investigating officer saw Smith drop an object which later proved to be a .22 caliber rifle onto the planting strip. Other officers then returned to Smith's apartment and discovered several rounds of .22 caliber ammunition in his dresser drawer and several live rounds of ammunition in the bottom of the toilet. The police went to the porch, noted that it looked directly down onto the scene of the shooting, and discovered several spent .22 casings. A .22 caliber casing was found on the ground directly below the porch.

Two other persons were in the apartment when the police arrived. One had been in the apartment at the time of the shooting. That witness told police that Smith talked about "shooting cars", then got his rifle, took aim at the pickup, and fired. Smith then stepped further out onto the patio and said, "Oh shit, he's off to the side."

The other witness told the police that Smith had called him, seemed agitated, and asked him to come over to Smith's apartment. After he arrived, they heard a knock at the door. Smith took a rifle from under the mattress and loaded it before he went to the door. Then a police officer identified himself, and Smith hid the rifle under the mattress again. After the officer left, the witness saw Smith remove .22 caliber shells from his dresser and try to flush them down the toilet. Smith next retrieved the rifle and disappeared for a few moments, returning without it.

At the sentencing hearing, the State recommended that Smith be sentenced at the top end of the standard range, that is, 26 months. A presentence investigator from the

Department of Corrections submitted a report that urged an exceptional sentence above the standard range, of no less than 5 years' total confinement. Her report indicated that Smith displaced all responsibility for his crimes on his mother. He showed an almost total lack of remorse or understanding of the pain and suffering he had caused the victim, who was required to undergo extensive therapy for his head injury and was not expected to fully recover for 7 to 9 years.

Defense counsel urged an exceptional sentence below the standard range, of 1 year of confinement followed by 24 months of community supervision in a mental health program. A psychological expert stated that Smith suffered from bipolar dysfunction which would be amenable to treatment involving a minimum of 3 to 5 years' psychotherapy with medication. She acknowledged, however, that the facilities providing such programs were not secured and there is a high likelihood that a person suffering from bipolar disorder will voluntarily discontinue the use of lithium, the indicated medication.

The court imposed an exceptional sentence of 90 months with a recommendation that Smith be placed in the special offender's center at Monroe State Reformatory where he might have access to treatment. In support of its sentence, the court made the following findings of fact:

I.

The facts of this offense establish a particularly serious violation of law more onerous than is typical for this offense. The assault was a wanton and willful act of uncontrolled anger directed in a random, senseless manner towards an innocent victim.

II.

The defendant has a history of prior violence which is not reflected in his offender score or standard range for this offense. This history consists of misdemeanor convictions for carrying a concealed weapon, discharging a firearm, menacing, assault, and property destruction.

III.

This current offense was committed while the defendant was on parole, and occurred less than two years after his release from prison on another charge of Assault 2 while armed with a

deadly weapon. It involves use and possession of a loaded firearm, which violates conditions of the defendant's parole.

### IV.

The multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purposes of the Sentencing Reform Act set forth in RCW 9.94A.010. The defendant has three independent prior felony convictions, but only one counts in determining the presumptive sentence. Under this policy, the presumptive sentence for this offense is the same as the presumptive sentence for the defendant's prior Assault 2 conviction.

### V.

The defendant continues to refuse to accept responsibility for his actions and blames others for his problems. He shows little remorse for the victim of this current offense.

### VI.

The defendant's psychological problems are not likely to be treated successfully. The risk of failure is high and treatment would take place in a facility that is not secure.

The court then made the following conclusions of law.

### I.

A sentence within the presumptive range for this offense would not be proportionate to the seriousness of the offense or the defendant's criminal history.

### II.

A sentence within the presumptive range for this offense would not adequately protect the public.

### III.

The exceptional sentence imposed in this case is necessary to adequately protect the public. The defendant poses a high risk of reoffending and presents a danger to the public.

### IV.

The exceptional sentence imposed in this case is necessary to accomplish the purposes of the Sentencing Reform Act, set forth in RCW 9.94A.010.

## II

Smith contends that the sentencing court's reasons for imposing an exceptional sentence did not properly justify the sentence.

■ In reviewing an exceptional sentence, this court first determines under a clearly erroneous standard of review whether the reasons are supported by the record. *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987). Second, the reviewing court must determine

whether, as a matter of law, the trial court's reasons justify a departure from the standard range. RCW 9.94A.210(4)(a); *Dunaway; State v. Tunell*, 51 Wn. App. 274, 278, 753 P.2d 543, *review denied*, 110 Wn.2d 1036 (1988). The reasons must be "substantial and compelling". RCW 9.94A.120(2). They must take into account factors other than those necessarily considered in computing the standard range for the offense. *State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987); *State v. Pascal*, 108 Wn.2d 125, 135–36, 736 P.2d 1065 (1987).

A. Serious Nature of the Violation.

In its first reason, the court found the offense to be "particularly serious" because it involved a "wanton . . . act of uncontrolled anger directed in a random, senseless manner".

The President's Commission on Law Enforcement and Administration of Justice stated in its 1967 report that "[t]here are some crimes so irrational, so unpredictable, so explosive, so resistant to analysis or explanation that they can no more be prevented or guarded against than earthquakes or tidal waves." President's Comm'n on Law Enforcement & Admin. of Justice, *Task Force Report: Crime and Its Impact—An Assessment* 1 (1967). The report concluded that physical assaults committed by strangers with weapons are the most feared crimes—and that this fear has "greatly impoverished" our lives, undermining "the security that comes from living in an orderly and trustworthy society". *Task Force Report, supra* at 87–89; President's Comm'n on Law Enforcement & Admin. of Justice, *The Challenge of Crime in a Free Society* 50–52 (Feb. 1967).

■ While it is true that many assaults in the second degree will be "wanton" or "willful", and will contribute to a sense of societal unease and fear, the additional factors in this case of unpredictable, irrational violence, committed without warning, are particularly insidious. Such random, senseless acts are especially destructive of society's sense of security. It is this aspect of the crime upon which the trial

court focused. We deem this to be a substantial and compelling reason supported by the record and justifying a departure from the standard range.

B. History of Violent Crimes.

Smith has a history of violent crimes which were not included in the calculation of his offender score. This history demonstrates Smith's high potential for future dangerousness, and therefore was appropriately considered by the trial court. *See McAlpin,* 108 Wn.2d at 464 (long–term repeater of crimes may be viewed as greater threat to society); *State v. Olive,* 47 Wn. App. 147, 150, 734 P.2d 36 (history of misdemeanor convictions may be considered in assessing future dangerousness), *review denied,* 109 Wn.2d 1017 (1987). Furthermore, Smith committed this violent crime within 2 years of his release from prison where he served a term for another assault committed with a deadly weapon.

This history of similar acts, especially since it involves a recent reoffense, justifies a departure from the standard sentencing range. *See State v. Woody,* 48 Wn. App. 772, 780–81, 742 P.2d 133 (1987), *review denied,* 110 Wn.2d 1006 (1988).

C. Parole Status.

An additional factor cited by the trial court was Smith's status on parole at the time of this offense. In an appropriate case, this factor may add weight to a conclusion of future dangerousness. We do not wish to foreclose consideration of such a factor in an appropriate case. Here, however, the record discloses that Smith's parole status related to two nonviolent felonies.

The record does not disclose whether or to what extent his parole status was affected by the present criminal conviction, but it is not disputed that the present conviction *could* affect that status independently of the sentence imposed by the trial court. Therefore, there appears to be no validity to consideration of parole status in this case as an independent factor to support the imposition of an exceptional sentence.

D. Multiple Offense Policy.

In its fourth finding of fact, the court attempts to justify its sentence by applying the multiple offense policy of RCW 9.94A.400 to Smith's prior criminal history. The court states that under the multiple offense policy the presumptive sentence was too lenient since his three prior felony convictions were counted as one. Smith argues this was a misapplication of the multiple offense policy.

RCW 9.94A.390(2)(g) (formerly (f)) provides that the sentencing court may consider as an aggravating circumstance the fact that the multiple offense policy would result in a presumptive sentence that is clearly too lenient. *See State v. Oxborrow,* 106 Wn.2d 525, 533–34, 723 P.2d 1123 (1986). Smith is correct, however, in arguing that the multiple offense policy applies only to the determination of whether *current* offenses should be served concurrently or consecutively. *See State v. Fisher,* 108 Wn.2d 419, 427–29, 739 P.2d 683 (1987); D. Boerner, *Sentencing in Washington* §§ 5.8, 9.13(e) (1985) (describing operation of multiple offense policy). The State cites no case where the multiple offense policy has been applied to adjust for the effect of *prior* felony convictions on calculation of the presumptive sentence. We hold that Smith is correct that the trial court's finding of fact 4 is an improper reason for imposing. an exceptional sentence.

E. Psychological Disorder.

Finally, the trial court considered Smith's psychological problems, and the fact that he continued to refuse to accept responsibility for his actions. Smith argues that his psychological problems should be considered a mitigating rather than aggravating factor. However, even Smith's own mental health expert expressed the opinion that there was a low probability of success in treatment, and the risk of voluntary discontinuance of medication "could be high." Under those circumstances, an exceptional sentence is justified in order to protect the public. *See Tunell,* 51 Wn. App. at 283.

In sum, we conclude that four out of six of the court's stated reasons justified a departure from the standard range as a matter of law.

## III

Finally, we consider whether this case must be remanded for resentencing. Remand may be warranted where a reviewing court invalidates some of the reasons used to justify an exceptional sentence. *See, e.g., Dunaway,* 109 Wn.2d at 219–20 (remanding where two of three reasons invalid and 20–year disparity existed between sentence imposed and standard range midpoint). We hold that it is not necessary in this case, however.

Here, a review of the court's oral opinion indicates that it did not substantially rely on the two invalid reasons set forth in its written decision, that is, the multiple offense policy and Smith's parole status. Rather, the court relied primarily on the history of violent acts, including the recent prior conviction for second degree assault while armed with a deadly weapon, and the high likelihood that within a rehabilitative program, Smith would voluntarily discontinue the use of lithium and terminate treatment. Since these factors together presented a substantial probability of future violence, the court emphasized the need to protect society in imposing its sentence. Given the trial court's reliance on valid and substantial reasons for its sentence, a remand is unnecessary. The court's oral opinion clearly indicates that it would impose the same sentence based on the proper reasons set forth in its written opinion. *See State v. Kidd,* 57 Wn. App. 95, 107, 786 P.2d 847 (1990); *Tunell,* 51 Wn. App. at 284.

We therefore affirm the sentence previously imposed.

GROSSE, A.C.J., and FORREST, J., concur.

Review granted at 115 Wn.2d 1022 (1990).