[No. 14174-4-II.    Division Two.    March 17, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
ANDREW PEREZ, *Appellant*.

*Douglas W. Tufts* of *Department of Assigned Counsel,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn-Brintnall, Senior Appellate Deputy,* for respondent.

SEINFELD, J. — Robert Perez pleaded guilty to vehicular homicide. The sentencing judge imposed an exceptional sentence of 7 years. Perez appeals the sentence. We affirm.

At approximately 10:30 p.m. on March 9, 1990, Pierce County Deputy Sheriff Wagner observed Perez driving erratically in the parking lot of the 72nd Street Pub. Perez's

headlights were on. Wagner stopped his car behind Perez's car, turned on his emergency lights, and left his car to talk to Perez. As he did so, Perez's car rolled forward. Wagner yelled at Perez to stop his car; Perez stopped momentarily, gave Wagner a blank look, and then accelerated out of the parking lot and turned off his headlights.

Perez headed east on 72nd Street. Wagner pursued him in his patrol car, but was never able to reduce the distance between them to less than three blocks. Perez, traveling at a speed of 50 to 60 m.p.h., crossed the center line and drove in the westbound lanes for approximately one block as he passed other eastbound cars. He then returned to the east-bound lanes and passed two eastbound cars on the right by driving in the curb lane. Continuing at a speed of approximately 60 m.p.h., he again crossed into the westbound lanes, again returned to the eastbound lanes, and then again swerved back into the westbound lanes where he drove head on into a Volkswagen van driven by Dan English. English died as a result of the injuries he received in the collision.

Perez's blood alcohol level was 0.27 2 hours after the collision.[1] The State charged him with vehicular homicide, and on May 29, 1990, Perez pleaded guilty.

Perez had a history of driving while intoxicated. In 1988, within a 1-month period, he was twice arrested and charged with driving while intoxicated. He pleaded guilty to the first charge, and the trial court ordered him to obtain an alcohol assessment and followup monitoring and to refrain from driving without a valid license. The trial court deferred prosecution on the second charge subject to the conditions, among others, that Perez abstain from alcohol and refrain from driving without a valid license. After Perez collided with and killed English, the trial court revoked the deferred prosecution order, entered judgment of conviction, and sentenced Perez to 1 year in jail on the second charge.

Both prior convictions for driving while intoxicated and an earlier conviction for hit and run (attended) were used to

---

[1]The legal level of intoxication is 0.10. RCW 46.61.502(2).

calculate Perez's offender score for his vehicular homicide sentence. Perez had also pleaded guilty to driving with his license suspended in September of 1989, but that offense was not used in calculating his offender score.[2] The calculations produced a standard range for the vehicular homicide of 36 to 48 months.

As Perez was advised in the plea agreement, the State recommended an exceptional sentence of 84 months. Perez's counsel argued for a standard range sentence, advising the sentencing judge that Perez consumed two whiskeys on the evening of the collision that were so strong Perez believed they were "spiked". Perez also claimed that he was robbed of his coat and wallet and beaten as he left the tavern, causing him to be in a dazed and frightened state. He claimed to have no memory of seeing a police officer. The trial court accepted the prosecutor's recommendation and sentenced Perez to 84 months in prison.

The sentencing court based the exceptional sentence on two aggravating factors. First, it found that the circumstances of Perez's offense were more onerous than the typical vehicular homicide, relying on *State v. Weaver*, 46 Wn. App. 35, 43, 729 P.2d 64 (1986), *review denied*, 107 Wn.2d 1031 (1987). Second, it found that Perez posed a future danger to the public because of his defiance of court orders, his failure to learn from counseling and from experience, and his continued drinking and driving, relying on *State v. Davis*, 53 Wn. App. 306, 315, 766 P.2d 1120, *review denied*, 112 Wn.2d 1015 (1989).

On appeal, Perez contends that neither factor justifies an exceptional sentence and that the sentence is clearly excessive. A commissioner of this court issued a ruling affirming the sentence but disallowing use of the future dangerousness factor in light of *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). Perez moved to modify, continuing to challenge the "more onerous" factor. This court granted his motion and heard argument.

---

[2] This is consistent with RCW 9.94A.360(12) and .030(26).

A sentencing court may impose an exceptional sentence only if it finds, considering the purposes of the sentencing reform act (RCW 9.94A.010), substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A-.120(2). We will reverse an exceptional sentence only if (1) the trial court's reasons are not supported by the record, (2) the trial court's reasons do not justify an exceptional sentence, or (3) the sentence is clearly excessive. RCW 9.94A-.210(4).

We review factual support for the sentencing court's reasons for clear error, reversing findings only if no substantial evidence supports the conclusion. *State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991). We review as a matter of law whether factually supported factors justify an exceptional sentence. *Grewe*, 117 Wn.2d at 215. Our review of legal adequacy employs a 2-part analysis. First, the aggravating factor must not have been necessarily considered in setting the standard range for the offense. *Grewe*, 117 Wn.2d at 215-16. Second, the "aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *Grewe*, 117 Wn.2d at 216. Whether the length of a sentence is clearly excessive is reviewed for abuse of discretion. *State v. Stephens*, 116 Wn.2d 238, 245, 803 P.2d 319 (1991).

The sentencing reform act did not eliminate judicial discretion to fashion individualized sentences when the facts of a particular case demand it.[3] Departure from the presumptive range is permitted, but the court must articulate its reasons for departing. RCW 9.94A.120(2), (3). This limit on discretion prevents arbitrary sentencing and allows meaningful and substantive appellate review. *See* D. Boerner, *Sentencing in Washington* §§ 9.1-9.2, 9.5 (1985).

Perez argues that the Legislature considered the entire universe of possible vehicular homicides in setting the presumptive sentence range for the crime. According to this

---

[3]The act "structures, but does not eliminate, discretionary decisions affecting sentences . . .". RCW 9.94A.010.

argument, even a uniquely egregious set of facts cannot justify an exceptional sentence. Instead, Perez contends that the sentencing court is limited to the high end of the presumptive range. We disagree.

"The Sentencing Guidelines Commission and the Legislature certainly intended the circumstances of the crime to play a role in the exceptional sentence process." D. Boerner, *supra* at 9-13. The underlying facts and nature of the crime committed can and should be a basis for an exceptional sentence. D. Boerner, *supra* §§ 9.6-9.7. Such a justification for an exceptional sentence is necessarily subjective, but a sentencing court's discretion is not arbitrary; it must articulate its reasons for any exceptional sentence, and review is readily available.

Our examination of the nature of this crime reveals seven particularly egregious facts. Perez (1) had an unusually high blood alcohol level, (2) was driving at very high speeds (3) at night, and (4) was weaving in and out of the eastbound lane. (5) His headlights were deliberately turned off, reducing English's chances of avoiding a collision, and (6) he struck English's van head on in the opposite curb lane. Finally, (7) Perez's previous convictions for driving while intoxicated and the related court appearances and court orders, including the order to avoid alcohol, put him on extraordinary notice of the illegality and potential hazards of his actions.[4]

Although each of these facts constitutes reprehensible conduct, we cannot say that any one of them would justify an exceptional sentence. We hold, however, that their combined effect makes the offense more egregious than typical, and justifies an exceptional sentence.

In reaching this result, we recognize that "more egregious" or "more onerous" facts is not listed as a statutory aggravating factor in RCW 9.94A.390.[5] However, that list is

---

[4] *But cf. State v. Bolton*, 68 Wn. App. 211, 842 P.2d 989 (1992).

[5] It is an aggravating factor if a drug offense is "more onerous than the typical offense of its statutory definition". RCW 9.94A.390(2)(d). Other statutory factors originally limited to certain offenses have been expanded to apply to other crimes.

merely illustrative and is not exclusive. RCW 9.94A.390. Support for a "more egregious" factor is also found in *State v. Weaver*, 46 Wn. App. at 43.

We also recognize that a portion of the reasoning in *Weaver* may no longer serve as precedent because the offense of driving while intoxicated, RCW 46.61.520, is now included in the offender score, RCW 9.94A.360(12), and because the *Weaver* court used analysis equivalent to a determination of future dangerousness. Nevertheless, the *Weaver* court's use of a more onerous (or egregious) factor remains analytically sound.

The more egregious factor also is supported by *State v. Smith*, 58 Wn. App. 621, 624, 626-27, 794 P.2d 541 (1990), *rev'd on other grounds sub nom. State v. Barnes*, 117 Wn.2d at 712. The *Barnes* court, while reversing *Smith*, agreed with the Court of Appeals that use of a more serious than typical factor was proper. 117 Wn.2d at 704, 712.

Finally, as applied to this case, the more egregious factor justifies the exceptional sentence. First, Perez's conduct was so egregious that it was not necessarily considered in setting the range for this offense.[6] Second, the egregious circumstances of Perez's violation of the law substantially and compellingly distinguish his violation from other vehicular homicides. Thus, facts more egregious than typical of the offense is a legally adequate aggravating factor. *See* RCW 9.94A.120(2), .210(4); *Grewe*, 117 Wn.2d at 215-16.

█ At oral argument before this court, Perez argued that the egregious facts cited by the court to justify an exceptional sentence constituted an additional crime not charged:[7]

---

*E.g., State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987) (abuse of a position of trust, RCW 9.94A.390(2)(c)(iv), extended to noneconomic offenses). We see no reason not to extend the "more onerous" factor to nondrug cases.

[6] The statute requires only (1) that the victim die within 3 years as a result of injury caused by the defendant's driving of a vehicle and (2) that the defendant had been driving while intoxicated, recklessly, or with disregard for the safety of others. RCW 46.61.520.

[7] This argument was not presented to the sentencing court nor argued in appellant's brief.

attempting to elude a pursuing police vehicle, RCW 46.61-.024.[8] Under the "real facts" doctrine, facts that establish the elements of a crime not charged may not be used to support an exceptional sentence except in certain circumstances. RCW 9.94A.370(2); *State v. Swanson*, 45 Wn. App. 712, 714-16, 726 P.2d 1039 (1986).

Although there may have been evidence sufficient to support a charge of eluding, the sentencing judge did not identify defendant's eluding a pursuing police vehicle as an aggravating factor. Thus, this argument is without merit.

■ We approve one of the sentencing court's two aggravating factors — the exceptionally egregious set of facts. The commissioner's order striking the future dangerousness justification was not challenged. We are satisfied that the trial court would have followed the State's recommendation and imposed the same sentence absent the improper factor. Therefore, we need not remand for further consideration. *State v. Fisher*, 108 Wn.2d 419, 429-30, 430 n.7, 739 P.2d 683 (1987). *State v. Drummer*, 54 Wn. App. 751, 760, 775 P.2d 981 (1989).

■ Finally, Perez argues that the 7-year length of his exceptional sentence is clearly excessive. We will not reverse unless the sentencing court exercised its discretion on untenable grounds or for untenable reasons or unless no reasonable judge would have imposed a sentence of this length. *Stephens*, 116 Wn.2d at 245. The sentence Perez received is less than twice the maximum presumptive range sentence of 4 years. Both the prosecutor and the presentence investigation report recommended the 7-year sentence. We cannot say that no reasonable judge would impose this sentence given the egregious circumstances of the offense.

Affirmed.

MORGAN, J., concurs.

---

[8] "Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to

ALEXANDER, C.J. (dissenting) — I respectfully dissent from the majority's opinion for several reasons. First, while I am persuaded that what Perez did is egregious and onerous, I am not convinced that his conduct was *more* egregious or onerous than that found in a typical vehicular homicide. The majority is persuaded that the combination of factors cited by the sentencing judge makes Perez's offense particularly reprehensible, thus justifying the exceptional sentence. It notes that the sentencing judge emphasized that Perez was driving at night and that he was weaving in and out of traffic lanes at speeds as high as 60 m.p.h., all at a time when he had a substantial amount of alcohol in his system. As bad as that conduct sounds, it is, unfortunately, conduct commonly exhibited by many persons charged with vehicular homicide. By establishing a standard range of 36 to 48 months for the offense of vehicular homicide, the Legislature recognized that not all vehicular homicides are the same. It, therefore, gave judges the ability to fashion a sentence appropriate to the particular facts of the case.

Furthermore, in my judgment, sentencing courts should rarely rely on the fact that an offense is more egregious or onerous than the typical offense, in imposing an exceptional sentence in a vehicular homicide case. I recognize that Division Three of this court has recognized this factor as an appropriate basis for an exceptional sentence in such cases. *State v. Smith*, 58 Wn. App. 621, 794 P.2d 541 (1990), *rev'd on other grounds sub nom. State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). I am not persuaded, however, that the *Smith* decision should be followed routinely. My concern about the use of that reason to support an exceptional sentence stems from my belief that judging one vehicular homicide to be more onerous than another is largely a subjective process, which is virtually impossible to review.

I know of no objective basis on which a trial judge can reliably determine that one offense is more onerous than

bring the vehicle to a stop, shall be guilty of a class C felony." RCW 46.61.024. The statute goes on to explain what a valid signal is and sets the punishment for the crime.

another. Obviously, there are extremes of conduct that fall within the vehicular homicide statute. Within those extremes is the judge to simply rely on his or her instincts, or does that judge engage in a comparison of the instant case with other like cases that have come before that court for sentencing? Furthermore, what standards does the appellate court apply in determining if the trial court erred in reaching its decision that an offense is more onerous than the typical offense? It would seem that the appellate court must either defer completely to the trial court's view of the case, or substitute its own experience regarding the relative seriousness of offenses. Neither alternative is palatable in my opinion.

Here, although the sentencing judge set forth some facts that led him to conclude that this case was particularly onerous, I am not, as I have noted above, convinced that the facts of this case were atypical. In addition, the sentencing court made no effort to compare this case to others. In short, the sentencing judge seems to have instinctively concluded that this case was more onerous than the typical. I, for one, am not prepared to give sentencing judges unbridled discretion to make that determination. To do so would render the determinate sentencing feature of the sentencing reform act rather meaningless.

Finally, I do not believe that it was proper for the trial court to rely on Perez's prior convictions and court appearances for DWI in imposing an exceptional sentence. As the majority concedes, prior convictions for DWI are included in the offender score for vehicular homicide and, thus, do not provide a basis for an exceptional sentence.

I would reverse the sentence and remand for imposition of a standard range sentence.

Review denied at 122 Wn.2d 1015 (1993).