[No. 41758-4-I.    Division One.    May 10, 1999.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE J. OWENS, *Appellant.*

*Gregory C. Link*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kristin J. Chandler, Deputy*, for respondent.

AGID, J. — Lawrence Owens appeals the exceptional sentences imposed after he was convicted of unlawful possession of a firearm and two counts of second degree assault. He contends the findings supporting the sentences are clearly erroneous and legally insufficient. He also argues that the exceptional sentence statutes, as applied to his conduct, are unconstitutionally vague and his sentence violates the equal protection clause. We affirm the trial court's exceptional sentence based on an assault that was more egregious than typical, rejecting Owens' challenge to that sentence on vagueness grounds. We also reject Owens' other constitutional challenges, but vacate the exceptional

sentence for the firearm offense because it was an element of the assault conviction.

## FACTS

### A. 1994 Incident

Owens was convicted of second degree kidnapping in 1994. After his release from prison, he became Mary Rodenbaugh's roommate. A few weeks later, on December 7, 1994, they went to a friend's house in Spokane. Owens was drinking and made several unwanted sexual advances towards Ms. Rodenbaugh. He told her to "give it up," threatened to shoot her with heroin, and told her he would make her work as a prostitute. Enraged that she refused his advances, Owens punched Ms. Rodenbaugh in the nose, knocked her to the ground, and kicked her in the chest. Ms. Rodenbaugh bled heavily from her nose.

When she tried to leave the house, Owens blocked her path, pushed her backwards, and told her to "give it up." As he became more hostile and aggressive, Ms. Rodenbaugh was afraid he would attack her again. She pulled down her pants and told Owens to " 'go ahead and just get it over with so I can go home.' " He had intercourse with her, then took her home.

When she arrived home, Ms. Rodenbaugh told her brother that she had been raped. She went to the hospital and learned that Owens had broken her nose. Owens was arrested and admitted having intercourse with Ms. Rodenbaugh after punching her in the nose.

### B. 1997 Incident

Owens dated Linda Nelson briefly. On July 7, 1997, they had dinner at Owens' apartment with some of his friends. During the evening, Owens became angry with Ms. Nelson, insulted her, then left with one of his friends. Later that evening, he returned and continued to insult her. Owens punched Ms. Nelson in her face with a closed fist so hard that he knocked her to the ground. When Ms. Nelson stood up and tried to leave, Owens grabbed her by the hair and

punched her in the eye, again knocking her to the ground. He then reached into a dresser drawer, took out a semi-automatic .40 caliber handgun, and held it to Ms. Nelson's head. With his other hand, he put a clip into the gun and said, " '[y]ou leave, I'm killing you.' " Ms. Nelson was terrified and lost control of her bowels. Soon afterwards, she was able to get to the front door of the apartment, opened the door and started screaming. As she called for help, she grasped the doorframe with her hand. Owens walked up, grabbed the door, and slammed it repeatedly on Ms. Nelson's hand. As she continued trying to escape, Owens punched her in the face repeatedly, knocking her to the ground several more times. When she was on the floor, Owens kicked her in her back.

Officers arrived, and Owens eventually let Ms. Nelson out of his apartment. When she came out, the officers saw she had a bleeding lip, a cut on her face, and broken blood vessels in her eye. While waiting for Owens to release Ms. Nelson, some of the officers heard a gun slide being operated. After they arrested Owens, they found the handgun, an empty gun case, and two boxes of .40 caliber ammunition.

The State charged Owens with four crimes: Count I—Assault in the Second Degree, Count II—Unlawful Imprisonment, Count III—Unlawful Possession of a Firearm in the First Degree, and Count IV—Assault in the Second Degree, Sexual Motivation.[1] Owens entered an *Alford* plea to all charges.[2] As part of the plea agreement, the State recommended a sentence within the standard sentence range of 70 months. At sentencing, the court reviewed the State's Certifications for Determination of Probable Cause and imposed an exceptional sentence: Count I—105 months,

---

[1]Counts I-III refer to the Nelson incident and Count IV to the attack on Ms. Rodenbaugh.

[2]*North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Count III—112 months, Count IV—105 months.[3] In imposing exceptional sentences for two of the counts arising from the Nelson incident, the court reasoned:

> The Court finds as to Count I there are indeed substantial and compelling reasons to impose a sentence beyond the standard range . . . . First, the combined factors of this offense make this a more egregious case than the typical Assault in the Second Degree, and thus the factors that exist in this case were not necessarily considered in setting the standard range for this offense.
>
> First, there were numerous assaults over and above the one that was charged. At least six assaults are noted in the Certification for Determination of Probable cause, in that the defendant first punched the victim in the face and knocked her to the ground, he grabbed her by the hair, he then punched her in the eye, it was at that point he committed the charged offense when he pointed a gun to her head. After that, when the victim sought to escape and had her hand on the door frame he slammed the door on her hand repeatedly. Following that he knocked her to the ground several more times while punching her in the face, and following that he kicked her in the back.
>
> Further, these assaults occurred over an extended period of time, during which the victim was held against her will.
>
> Further, these assaults had the effect of causing the victim to suffer extreme fear and anxiety well beyond that normally suffered by the victim of an Assault in the Second Degree, as reflected by the victim's loss of her bowel movement during the assault.
>
> . . . .
>
> Further, the defendant's assaults had the egregious effect of causing the victim extreme humiliation . . . and this effect is not accounted for in the standard range. . . .

## DISCUSSION

Owens argues that the record does not support the trial

---

[3]The standard ranges for these offenses are: Count I—53-70 months, Count III—57 to 75 months, and Count IV—53-70 months.

court's findings that the 1997 assault was more egregious than typical, the "clearly too lenient" aggravating factor of the Sentencing Reform Act of 1981 (SRA) does not apply to him, and the exceptional sentence statutes are unconstitutionally vague as applied to his conduct. Because we conclude that the 1997 assault was more egregious than the typical assault and the statute is not unconstitutional, we affirm the exceptional sentence for this assault.[4]

A. Exceptional Sentence

■■ A trial court may impose an exceptional sentence for "substantial and compelling reasons."[5] Review of an exceptional sentence requires an appellate court to conduct a three-part analysis. First, does the record support the reasons given for an exceptional sentence? The court applies a "clearly erroneous" standard to this review.[6] Second, are the reasons for the sentence legally sufficient? We conduct this review de novo. Third, was the sentence clearly too excessive?[7] Because Owens does not allege that his sentence was excessive, we restrict our analysis to its factual and legal sufficiency.

The sentencing court entered the following written finding of fact on Count I:

> [The] Court finds substantial/compelling reasons for [an] excep[tional] sent[ence] based on: 1) Combined factors in this case are more egregious that [sic] is necessary to commit Assault 2°—a) multiple assaults (punched, hair pulled, punched in eye, gun held to her, door slammed on hand, knocked down, kicked in back)[.] b) Assaults over period of time—victim suffered[.] c) Victim suffered extreme fear/anxiety—exemplified by victim losing bowel control. . . .

As the facts set out above demonstrate, substantial evidence supports this finding.

---

[4]We address Owens' remaining issues, including his challenge to the Rodenbaugh conviction and sentence in the unpublished portion of this opinion.

[5]RCW 9.94A.120(2).

[6]RCW 9.94A.210(4); *State v. Copeland*, 130 Wn.2d 244, 296, 922 P.2d 1304 (1996).

[7]*Id.*

■ Owens' primary complaint is that the sentencing court did not define a "typical assault." Therefore, he argues, it improperly found his assault on Ms. Nelson was more egregious than typical. But the trial court is not required to define "typical assault." Instead, we use a two-part analysis to determine the validity of an aggravating factor:

> First, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range. Second, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category.[8]

Under the second prong of this analysis, a "typical" offense is defined by the elements of the charged crime.[9]

The State charged Owens with and had to prove that he committed a "typical" second-degree assault: an intentional assault using a deadly weapon. Substantial evidence supports the sentencing court's determination that Owens committed more than a "typical" second degree assault of Ms. Nelson because he did much more than hold a gun to her head. The abusive nature of Owens' assault, with its accompanying terror, distinguishes the crime from other assaults in the same category. When the Legislature established the standard sentence range for second degree assault with a deadly weapon, it did not contemplate that the crime also included serial beatings. These egregious circumstances are substantial and compelling reasons to distinguish this case from other assaults in the same category.[10] We affirm the trial court's finding that Owens' behavior was "more egregious than necessary" to commit the charged assault.

---

[8]*State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991).

[9]*Id.* at 216-18.

[10]We note that the more "egregious" or "onerous" aggravating factor has been approved by a variety of cases. *See, e.g., State v. Weaver*, 46 Wn. App. 35, 43, 729 P.2d 64 (1986) (vehicular assault), *review denied*, 107 Wn.2d 1031 (1987); *State v. Smith*, 58 Wn. App. 621, 794 P.2d 541 (1990) (assault 2) (*reversed on other grounds*, 117 Wn.2d 701 (1991); *State v. Barnes*, 117 Wn.2d 701, 704, 712, 818

■ Owens also argues that the "clearly too lenient" aggravating factor does not apply to his 1997 assault. We agree.

The sentencing court found:

SRA multiple offense policy clearly too lenient in this case [sic]; multiple assaults which were not taken into account in standard range.

The sentencing court relied upon RCW 9.94A.390(2)(i), which permits the court to impose an exceptional sentence if:

[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

The "clearly too lenient" aggravating factor applies where:

there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the *presumptive sentencing range*.[11]

The sentencing court need not find extraordinarily serious harm in order to impose an exceptional sentence under the clearly too lenient factor.[12] Rather, for this aggravating factor to apply, standard punishment for a defendant's current convictions must be inadequate *due to the operation of the multiple offense policy*. Thus, in *State v. Brown*, we affirmed an exceptional sentence where Brown was convicted of five counts of stalking, and the multiple offense policy dictated the identical punishment for all five counts (a maximum of one year, all counts to run concurrently) as

---

P.2d 1088 (1991)); *State v. Perez*, 69 Wn. App. 133, 138-39, 847 P.2d 532, *review denied*, 122 Wn.2d 1015 (1993) (vehicular assault); *State v. Oksoktaruk*, 70 Wn. App. 768, 856 P.2d 1099 (1993) (vehicular assault and homicide).

[11]*State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987) (emphasis added).

[12]*See, e.g., State v. Brown*, 91 Wn. App. 361, 366, 957 P.2d 272 (1998), *review denied*, 137 Wn.2d 1002 (1999).

for one stalking conviction (one year).[13] Other cases construing the "clearly too lenient" aggravating factor approve using it in instances where "the defendant has committed a number of crimes and his high offender score does not result in any greater penalty than if he had committed only one."[14]

Neither situation is present here. The sentencing court properly counted each of Owens' current felony convictions when it calculated his offender scores. Those scores are higher because multiple offenses are included. The sentencing court's clearly too lenient finding actually just reiterates its determination that the 1997 assault was egregious. The facts do not establish that the standard range sentence is "clearly too lenient" *because of* the operation of the multiple offense policy.

■ The sentencing court erroneously relied on the "clearly too lenient" factor. But the record clearly shows that the court would have imposed the same exceptional sentence based upon the more-egregious-than-typical aggravating factor alone.[15] We therefore affirm the exceptional sentence for the 1997 assault.

## B. Vagueness Challenge

■ Owens argues that RCW 9.94A.120(2) and RCW 9.94A.390 are unconstitutionally vague as applied to him because the statutes "fail to define when a crime is typical or when a crime is more egregious than typical." We recently rejected this argument in *State v. Jacobson.*[16] There, we said that discretionary sentencing guidelines " 'are simply not susceptible to a vagueness attack' " because they do not " 'proscribe or prescribe conduct' " and " 'there is no constitutional right to sentencing guide-

---

[13]*See Brown*, at 366.

[14]*State v. Stewart*, 125 Wn.2d 893, 897, 890 P.2d 457 (1995). *See also State v. Smith*, 123 Wn.2d 51, 56, 864 P.2d 1371 (1993); *State v. Stephens*, 116 Wn.2d 238, 244-45, 803 P.2d 319 (1991).

[15]*See State v. Cardenas*, 129 Wn.2d 1, 12, 914 P.2d 57 (1996).

[16]*State v. Jacobson*, 92 Wn. App. 958, 965 P.2d 1140 (1998).

lines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines[.]' "[17]

Owens contends that we should not follow *Jacobson* because it ignores a criminal defendant's state-created "liberty interest in avoiding imposition of punishment greater than the standard range[.]" In support of his argument, Owens relies on *Hicks v. Oklahoma*[18] and its progeny. But these cases merely recognize that

> state laws which guarantee a criminal defendant procedural rights at sentencing, even if not themselves constitutionally required, *may* give rise to liberty interests protected against arbitrary deprivation by the Fourteenth Amendment's Due Process Clause. . . .[19]

To actually create a constitutionally protected liberty interest, the state procedural right must be "unqualified."[20]

For example, in *Clemons v. Mississippi*,[21] after convicting Clemons of capital murder, "[t]he jury sentenced [him] to

---

[17]*Id.* at 966 (quoting *United States v. Wivell*, 893 F.2d 156, 159 (8th Cir. 1990)); *accord United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999), *reh'g granted*, __ F.3d __ (7th Cir. Mar. 25, 1999); *State v. Wagner*, 194 Ariz. 1, 976 P.2d 250 (Ct. App. 1998); *but see United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997) (noting that the Ninth Circuit applies vagueness doctrine to sentencing provisions notwithstanding case law questioning the theoretical soundness of doing so).

The doctrine of vagueness involves two due process concepts: (1) notice to an accused of conduct that is proscribed or required, and (2) the right of a citizen not to be the subject of arbitrary enforcement of laws regulating his or her conduct. *See State v. Myles*, 127 Wn.2d 807, 812, 903 P.2d 979 (1995). Washington's Sentencing Reform Act of 1981 does not establish the illegality of any conduct. Rather, it provides directives to judges and not to citizens. Therefore, as the *Jacobson* court notes, it is "theoretically and analytically unsound" to apply the void for vagueness doctrine to the SRA. *Jacobson*, 92 Wn. App. at 967.

[18]447 U.S. 343, 346-47, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980) (holding that an instruction requiring the jury to sentence defendant to mandatory term violated the defendant's right to due process of law because Oklahoma law entitled the defendant to have the jury determine his sentence).

[19]*Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir. 1992) (emphasis added), *cert. denied*, 510 U.S. 1215 (1994).

[20]*See Jeffers v. Lewis*, 38 F.3d 411, 415-16 (9th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995).

[21]494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990).

death, finding that both aggravating factors argued by the State were present and that they outweighed any mitigating circumstances.''[22] On appeal, the Mississippi Supreme Court held that one of the aggravating factors found by the jury was unconstitutional. Nonetheless, the court affirmed Clemon's death sentence. It concluded beyond a reasonable doubt that the jury would have imposed the same sentence even if it did not consider the unconstitutional aggravating factor and that the death sentence was not ''too great'' a punishment in Clemon's case.[23]

On certiorari, Clemons

> argue[d] that under Mississippi law only a jury has the authority to impose a death sentence, . . . and that he therefore had a liberty interest under the Due Process Clause of the Fourteenth Amendment in having a jury make all determinations relevant to his sentence.[24]

Distinguishing *Hicks*, the U.S. Supreme Court concluded that Clemons did not have an ''unqualified liberty interest'' under Mississippi law in having a jury make all sentencing decisions.

> Contrary to the situation in *Hicks*, the state court in this case, as it had in others, asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed even though one of the two aggravating circumstances on which the jury had relied should not have been, or was improperly, presented to the jury. The court did not consider itself bound in such circumstances to vacate the death sentence and to remand for a new sentencing proceeding before a jury. We have no basis for disputing this interpretation of state law, which was considered by the court below to be distinct from its asserted authority to affirm the sentence on the ground of harmless error, and which plainly means that we must reject Clemons' assertion that he had an unqualified

---

[22]*Id.* at 743.

[23]*Id.* at 743-44.

[24]*Id.* at 746 (relying on *Hicks v. Oklahoma*, 447 U.S. 343, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980)).

liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed.[25]

The U.S. Supreme Court concluded that the Mississippi Supreme Court did not violate Clemon's due process rights by re-weighing the aggravating and mitigating circumstances in his case.[26]

Similarly, Washington's Sentencing Reform Act does not create an unqualified liberty interest in a presumptive range sentence. Instead, the SRA specifically provides that sentencing courts may depart from the presumptive sentence range "if . . . there are substantial and compelling reasons justifying an exceptional sentence."[27] Therefore, as long as the sentencing court follows the SRA's guidelines and procedures, as the sentencing court did in this case, due process is satisfied.

Nonetheless, the Washington Supreme Court has stated that

"[a]lthough most vagueness challenges are directed at statutes which prohibit particular conduct without defining that conduct, defendant's constitutionally protected liberty interest created by the juvenile disposition standards is also subject to the void-for-vagueness test."[28]

The State provides no meaningful basis to distinguish the juvenile sentencing guidelines involved in *Rhodes* from the adult sentencing guidelines challenged here. Therefore, even though we are convinced that *Jacobsen/Wivell* analysis is theoretically and analytically sound, we must apply the void for vagueness doctrine to the discretionary sentencing guidelines found in RCW 9.94A.120(2) and RCW 9.94A.390.

██ Owens bears the burden of proving beyond a rea-

---

[25]*Clemons*, 494 U.S. at 747.

[26]*Id.*

[27]RCW 9.94A.120(2).

[28]*State v. Rhodes*, 92 Wn.2d 755, 759, 600 P.2d 1264 (1979).

sonable doubt that the exceptional sentence statutes, as applied to his conduct, are unconstitutional.[29] The statutes are presumed constitutional.[30] "The test for vagueness of provisions in the SRA is whether a person of reasonable understanding is required to guess at the meaning of the statute."[31] A defendant need not be able to determine with certainty what his sentence will be.[32]

Here, Owens terrorized and brutalized his victim. A person of reasonable understanding can comprehend that the SRA authorizes a sentencing court, in its discretion, to impose an exceptional sentence based on such egregious conduct.[33] We reject Owens' due process vagueness challenge to the "more onerous than typical" aggravating factor.[34] The exceptional sentence statutes are not vague as applied to Owens' conduct.[35]

A majority of the panel having concluded that the remainder of this opinion lacks precedential value, it is

---

[29]We use "vagueness as applied" analysis because the challenged statutes do not implicate Owens' right to free speech. *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993).

[30]*Id.* at 118.

[31]*State v. Branch*, 129 Wn.2d 635, 648, 919 P.2d 1228 (1996).

[32]*See State v. Rousseau*, 78 Wn. App. 774, 777, 898 P.2d 870 (1995), *review denied*, 128 Wn.2d 1011 (1996) ("Absent reliance by a trial court upon an unconstitutional basis for imposing a particular sentence, we see no constitutional implications in the fact that different results may ensue from similar facts.").

[33]*See Jacobson*, 92 Wn. App. at 967-68. As noted in *Jacobson*, it is difficult to imagine any provision that grants limited discretion to the sentencing court failing the vagueness test. *Id.* at 966.

[34]The ease with which a vagueness challenge can be rejected further demonstrates the theoretical and analytical unsoundness of applying the void for vagueness doctrine to discretionary sentencing guidelines. *See, e.g., Rhodes*, 92 Wn.2d at 758-60; *Jacobson*, 92 Wn. App. at 967-68.

Of course, if a sentencing provision were ambiguous, the rule of lenity would require that the ambiguous sentencing provision be interpreted in the defendant's favor. *See In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 249-50, 955 P.2d 798 (1998). But Owens does not contend that RCW 9.94A.120(2) or RCW 9.94A.390 is ambiguous.

[35]Owens also submits that the discretion provided to sentencing courts under the exceptional sentence statutes would lead to arbitrary application of the statute. We rejected the identical argument in *Jacobson*, and reject it here for the same reasons. 92 Wn. App. at 968-69.

ordered that only the foregoing will be published. The balance of the opinion will be filed for public record as provided in RCW 2.06.040.

KENNEDY, C.J., and WEBSTER, J., concur.

Review denied at 138 Wn.2d 1015 (1999).