[No. 42046-1-I. Division One. July 6, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. HARLAN GENE WILSON, *Appellant*.

---

[12]We therefore need not reach the remaining issues raised by Jones in this appeal.

Gregory Charles Link, for appellant.

James H. Krider, Prosecuting Attorney, and Kenneth Alan Schiffler, Deputy, for respondent.

KENNEDY, C.J. — After Harlan G. Wilson pleaded guilty to communicating with a minor for an immoral purpose, second degree assault, and failing to register as a sex offender, the court imposed an exceptional sentence by running his 60-month presumptive range sentence for communicating with a minor for an immoral purpose consecutively with his 57-month presumptive range sentence for second degree assault. Wilson appeals his 117-month sentence, contending as follows: (1) the court's stated reasons for imposing an exceptional sentence—the seriousness of the victim's injuries, a prior unscored misdemeanor for failing to register as a sex offender, and the operation of the multiple offenses policy of RCW 9.94A.400—are not legally adequate and are not supported by the record; (2) RCW 9.94A.120 and RCW 9.94A.390, the statutes authorizing exceptional sentences, are unconstitutionally vague as applied to him; and (3) the seriousness of the victim's injuries aggravating factor, which Wilson likens to the conduct more egregious than typical aggravating factor, infringes upon his right to appeal the exceptional sentence, his right to equal protection under the law, and his right to due process of law.[1] We reject these contentions and affirm Wilson's exceptional sentence.

## STATEMENT OF FACTS

On November 20, 1997, Wilson pleaded guilty to communicating with a minor for an immoral purpose, second degree assault, and failing to register as a sex offender, stating as follows:

On or about 10/8/97 in Snohomish County, WA[,] I did: (1)

---

[1]Wilson also contended in his opening brief that the sentencing court improperly calculated his offender score for communicating with a minor for an immoral purpose, but abandoned this contention and conceded no error at oral argument.

communicate with a girl under the age of 18 for immoral purposes having been previously convicted of Indecent Liberties in 1988[;] (2) intentionally assault a woman which led to substantial injuries to her fingers as a result of my acts. [(3)] On or about July 27, 1997[,] I did change residence[s] but did not re-register (as a sex offender), which I have a duty to do.

Clerk's Papers at 22. After accepting Wilson's plea, the sentencing court concluded that an exceptional sentence upward should be imposed for the following reasons:

1. The degree of harm suffered by [P.G.] was substantially greater than the typical Assault in the Second Degree offense with regards both to the degree of harm inflicted upon her hand and by the psychological impact of the event. [P.G.] was justified in viewing this event as being sexually motivated because after the incident she found out that she had been the second victim of the defendant that morning; because she found out that the defendant was an unregistered sex offender; because she found out that when the defendant was arrested, he was wearing women's underwear which contained cutout pictures of girls. The psychological impact has affected her lifestyle and resulted in more suffering than the typical Assault in the Second Degree. (Regarding Count II).

2. The defendant's prior misdemeanor offense of FAILING TO REGISTER as a Sex Offender is unscored and should be taken into account. (Regarding Counts I and II).

3. Pursuant to RCW 9.94A.390 the multiple offense policy would result in too lenient a sentence in this case where a known sex offender who was unregistered at the time of the offense accomplished two separate, random attempted abductions. (Regarding Counts I and II).

Clerk's Papers at 2-3. Applying RCW 9.94A.400(1), the sentencing court ordered Wilson's 60-month presumptive range sentence for communication with a minor for an immoral purpose to run consecutively with his 57-month presumptive range sentence for second degree assault, but concurrently with his 12-month sentence for failing to register as a sex offender. In addition, the sentencing court stated in its written findings of fact and conclusions of law

that it considered each aggravating factor separately, and that each standing alone would support Wilson's exceptional sentence.

Wilson appeals his exceptional sentence.

## DISCUSSION
### I. RCW 9.94A.210(4)(a)

"A reviewing court will not reverse an exceptional sentence under RCW 9.94A.210(4)(a) unless the sentencing court's stated reason for imposing the exceptional sentence is clearly erroneous or its stated reason does not justify an exceptional sentence as a matter of law." *State v. Jacobson,* 92 Wn. App. 958, 964, 965 P.2d 1140 (1998) (citing *State v. Jeannotte,* 133 Wn.2d 847, 856-57, 947 P.2d 1192 (1997)), *review denied,* 137 Wn.2d 1033 (1999). "A stated reason justifying an exceptional sentence is legally adequate if it is substantial and compelling, and does not duplicate factors necessarily considered by the Legislature in computing the standard range." *Id.* at 965. "A stated reason justifying an exceptional sentence is clearly erroneous if it is not supported by substantial evidence in the record." *Id.* at 964. " 'Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise.' " *Id.* (quoting *State v. Graffius,* 74 Wn. App. 23, 29, 871 P.2d 1115 (1994)).

### A. Seriousness of the Victim's Injuries

Wilson challenges the sentencing court's first stated reason for imposing an exceptional sentence, "[t]he degree of harm suffered by [P.G.] was substantially greater than the typical Assault in the Second Degree offense," Clerk's Papers at 2, contending that this aggravating factor is not legally adequate and is not supported by the record.

"As a general rule, the seriousness of a victim's injuries cannot be used to justify an exceptional sentence if that factor has been considered in defining the crime itself." *State v. Tunell,* 51 Wn. App. 274, 279, 753 P.2d 543 (1988),

*overruled on other grounds by State v. Batista,* 116 Wn.2d 777, 808 P.2d 1141 (1991). But "the effects on the victim may be used to justify an exceptional sentence if they are significantly more serious than in the usual case." *Tunell,* 51 Wn. App. at 279; *accord State v. Flake,* 76 Wn. App. 174, 183, 883 P.2d 341 (1994) ("According to case law, the seriousness of a victim's injuries is a valid aggravating factor if 'the conduct producing the harm, and the harm produced, were significantly more serious than what is typically involved in the crime.' ") (citation omitted). Therefore, this court's review of this particular aggravating factor is limited to determining whether there is sufficient evidence in the record to persuade a fair-minded person that P.G.'s injuries were substantially greater or significantly more serious than typical for a second degree assault case. *See Jacobson,* 92 Wn. App. at 970-71 (discussing appellate review of the "conduct more egregious than typical" aggravating factor under *State v. Solberg,* 122 Wn.2d 688, 705, 861 P.2d 460 (1993)).

Wilson attacked P.G. from behind as she was walking down a path to her backyard. Wilson pinned her to the ground and tried to cover her mouth with his hand. P.G. screamed and fought Wilson until he abandoned the attack. As a result of the attack, P.G. suffered a serious injury to her ring finger that required surgery. At the time of sentencing, it was unclear whether P.G. would regain full use of her hand. Wilson admitted in his guilty plea that P.G. suffered "substantial injuries to her fingers" as a result of the attack. Clerk's Papers at 22.

In addition to the serious physical and psychological impact of the initial attack, P.G. later learned that Wilson grabbed and groped a 15-year-old girl minutes before he attacked her, that Wilson had a women's nightgown and a photograph of young girls taking a bath in his jacket when he attacked her, and that Wilson was wearing women's underwear and had pictures of young girls with him when he was arrested. This information caused P.G. to view Wilson's attack upon her as sexually motivated, which, in turn, added to her psychological distress.

In her victim impact statement, P.G. stated that she was unable to sleep without medication or stay home alone for weeks after the attack, that she was still afraid to go into her backyard, that she was unable to take her daily walks or go jogging, and she was receiving treatment for delayed stress syndrome.

This evidence is sufficient to persuade a fair-minded person that P.G.'s physical and psychological injuries were substantially greater or significantly more serious than typical for a second degree assault case. Therefore, the seriousness of the victim's injuries aggravating factor is supported by substantial evidence in the record, and the sentencing court did not err in relying on this aggravating factor as a basis for imposing an exceptional sentence in this case. *See Jacobson*, 92 Wn. App. at 970-71 (citing *Solberg*, 122 Wn.2d at 705).

## B. Prior Unscored Misdemeanor

Wilson challenges the sentencing court's second stated reason for imposing an exceptional sentence, a prior unscored misdemeanor conviction for failing to register as a sex offender, contending that it is not supported by the record and is not legally adequate. In *State v. Ratliff*, 46 Wn. App. 325, 730 P.2d 716 (1986), however, this court held that a defendant's prior unscored misdemeanor convictions may constitute a substantial and compelling reason to impose an exceptional sentence. *Id.* at 332-33. In 1995, the Legislature amended the Sentencing Reform Act of 1981 (SRA) to specifically provide that prior unscored misdemeanors may constitute a substantial and compelling reason for imposing an exceptional sentence if "[t]he defendant's prior unscored misdemeanor or prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter as expressed in RCW 9.94A.010." RCW 9.94A.390(2)(j); LAWS OF 1995, ch. 316, § 2. The purpose of RCW 9.94A, as expressed in RCW 9.94A.010, is to:

(1) Ensure that the punishment for a criminal offense is

proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve him or herself; and

(6) Make frugal use of the state's resources.

RCW 9.94A.010.

 In this case, the sentencing court found that Wilson's "prior misdemeanor offense of FAILING TO REGISTER as a Sex Offender is unscored and should be taken into account." Clerk's Papers at 2. Although the sentencing judge did not expressly find that Wilson's prior unscored misdemeanor resulted in a presumptive range sentence that was "clearly too lenient" in his written findings of fact, the sentencing judge did make such a finding in his oral decision:

> [O]bviously the situation of a known sex offender who has failed to register not once but twice, who engages in two separate acts of random attempted abductions of women within moments of each other all lead to the conclusion that to sentence the defendant within the standard range would in fact result in too lenient of a sentence within this particular case.

Report of Proceedings at 19-20.[2] In light of the SRA's stated purpose of proportionate punishment based on the seriousness of the crime and the defendant's criminal history, RCW 9.94A.010(1), there is sufficient evidence in the record to persuade a fair-minded person that Wilson's prior unscored

---

[2] "Inadequate written findings may be supplemented by the trial court's oral decision or statements in the record." *In re Detention of LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986).

misdemeanor would result in a presumptive range sentence that is clearly too lenient. Therefore, the sentencing court did not err in relying on Wilson's prior unscored misdemeanor conviction for failing to register as a sex offender as a basis for imposing an exceptional sentence.

C. The Operation of the Multiple Offenses Policy of RCW 9.94A.400

A sentencing court may impose an exceptional sentence upward if "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A-.390(2)(i). "It is proper to rely on this aggravating factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive range." *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987), *quoted in State v. Smith*, 123 Wn.2d 51, 56, 864 P.2d 1371 (1993). "This inquiry is automatically satisfied whenever 'the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in "free" crimes—crimes for which there is no additional penalty[.]' " *Smith*, 123 Wn.2d at 56 (quoting *State v. Stephens*, 116 Wn.2d 238, 243, 803 P.2d 319 (1991)). But a sentencing court "may properly conclude that the sentence is clearly too lenient where the presumptive sentence does not adequately account for all crimes, even if the defendant does not receive a 'free crime.' " *State v. Reynolds*, 80 Wn. App. 851, 861, 912 P.2d 494 (1996) (citing *Smith*, 123 Wn.2d at 56); *but see State v. Morris*, 87 Wn. App. 654, 662, 943 P.2d 329 (1997) ("Cases construing the multiple offense aggravating factor limit its application to situations where 'the defendant has committed a number of crimes and his high offender score does not result in any greater penalty than if he had committed only one.' ") (citation omitted), *review denied*, 134 Wn.2d 1020 (1998).

In this case, Wilson's offender score for communicating

with a minor for an immoral purpose is eleven—netting a presumptive range of 51 to 60 months.[3] Because Wilson's offender score puts him in the sentencing grid's maximum "nine or more" category, the State maintains that if the sentencing court imposed a standard range sentence, Wilson would receive no additional time for his current second degree assault conviction, which raised his offender score from a ten to an eleven. *See* RCW 9.94A.310(1). But Wilson's offender score for his current second degree assault conviction, a Seriousness Level IV crime, was only an eight—netting a presumptive range of 53 to 70 months. *Id.* This sentence punishes him for all three of his current offenses, because his communicating with a minor for an immoral purposes conviction raises the presumptive sentence range for his second degree assault conviction from 33 to 43 months to 43 to 57 months, and his failure to register as a sex offender conviction further raises the presumptive sentence range from 43 to 57 months to 53 to 70 months. *Id.* Therefore, this is not a case in which "the defendant has committed a number of crimes and his high offender score does not result in any greater penalty than if he had committed only one." *State v. Stewart*, 125 Wn.2d 893, 897, 890 P.2d 457 (1995).

Nonetheless, as discussed above, even if the defendant does not receive a "free crime," the sentencing court may impose an exceptional sentence upward if "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.390(2)(i); *see also Reynolds*, 80 Wn. App. at 861. And in this case, the sentencing court found that "the multiple offense policy would result in too lenient a sentence in this case where a known sex offender who was unregistered at the time of the offense accomplished two separate, random attempted abductions."

---

[3]Although the presumptive sentence range for a Seriousness Level III offense committed by a defendant with an offender score of "nine or more" is 51 to 68 months, RCW 9.94A.310(1), the statutory maximum for communicating with a minor for an immoral purpose, a class C felony, is 60 months. *See* RCW 9A.20.021.

Clerk's Papers at 3. This finding does not demonstrate the sentencing court's dissatisfaction with the standard range. Rather, it demonstrates the sentencing court's dissatisfaction with the operation of the multiple offenses policy—in light of the SRA's stated purposes of ensuring proportionate punishment and protecting the public—where an unregistered sex offender ran amok randomly attacking two women in a short period of time. Therefore, the sentencing court did not err in concluding that the operation of the multiple offenses policy of RCW 9.94A.400 would result in presumptive sentence that was clearly too lenient in light of the purposes of the SRA.

## II. Vagueness Doctrine

■ Wilson likens the seriousness of the victim's injuries aggravating factor with the conduct more egregious than typical aggravating factors and contends that RCW 9.94A.120(2) and RCW 9.94A.390—the statutes authorizing exceptional sentences—are unconstitutionally vague as applied to him, because the statutes "do not offer an objective framework to determine when a crime is more egregious or substantially greater than typical." Appellant's Br. at 25. The State, citing *State v. Jacobson*, 92 Wn. App. 958, 965 P.2d 1140 (1998), *review denied*, 137 Wn.2d 1033 (1999), contends that vagueness doctrine does not apply to the SRA's discretionary sentencing guidelines for exceptional sentences.[4]

In *State v. Owens*, 95 Wn. App. 619, 976 P.2d 656 (1999),

---

[4]Wilson contends that *Jacobson* lacks precedential value because its discussion of the vagueness doctrine as the doctrine relates to exceptional sentences is "advisory in nature," and courts of this state "cannot issue advisory opinions." Appellant's Supplemental Br. at 3 (citing *Walker v. Munro*, 124 Wn.2d 402, 414, 879 P.2d 920 (1994); *Washington Beauty College v. Huse*, 195 Wash. 160, 164, 80 P.2d 403 (1938)). But there is a difference between issuing advisory opinions where there is no justiciable controversy before the court and issuing opinions that flag potential issues related to an issue before the court. *Compare State ex rel. O'Connell v. Kramer*, 73 Wn.2d 85, 86-87, 436 P.2d 786 (1968) (refusing to render an opinion on the constitutionality of a proposed initiative measure filed with the Secretary of State but not yet enacted by the people) *with State v. Tunney*, 129 Wn.2d 336, 339 & n.2, 917 P.2d 95 (1996) (pointing out commentary questioning a Court of Appeals' decision on an issue not before the court). Therefore, although this court is not necessarily bound by the dicta in *Jacobson* regarding the

this court adopted the *Jacobson* court's reasoning and concluded that discretionary sentencing guidelines are not susceptible to vagueness attacks:

> The doctrine of vagueness involves two due process concepts: (1) notice to an accused of conduct that is proscribed or required, and (2) the right of a citizen not to be the subject of arbitrary enforcement of laws regulating his or her conduct. *See State v. Myles*, 127 Wn.2d 807, 812, 903 P.2d 979 (1995). Washington's Sentencing Reform Act of 1981 does not establish the illegality of any conduct. Rather, it provides directives to judges and not to citizens. Therefore, as the *Jacobson* court notes, it is "theoretically and analytically unsound" to apply the void for vagueness doctrine to the SRA. *Jacobson*, 92 Wn. App. at 967.

*Owens*, 95 Wn. App. at 629 n.17.[5] Nonetheless, the *Owens* court recognized that the Supreme Court held in *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979), that " '[a]lthough most vagueness challenges are directed at statutes which prohibit particular conduct without defining that conduct, defendant's constitutionally protected liberty interest created by the juvenile disposition standards is also subject to the void-for-vagueness test.' " *Rhodes*, 92 Wn.2d at 759, *quoted in Owens*, 95 Wn. App. at 631. Un-

applicability of the vagueness doctrine to exceptional sentences, it was appropriate for the *Jacobson* court to identify issues related to the case at hand that it perceived as needing clarification from the Supreme Court. *Cf.* RCW 2.06.110 (requiring Court of Appeals' judges to report "defects and omissions in the laws as their experience may suggest" to the Supreme Court).

[5]*Accord United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990) ("Because there is no constitutional right to sentencing guidelines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines—the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague."); *see also United States v. Negri*, No. 98-6178, 1999 WL 157423, at *5 (10th Cir. Mar. 23, 1999) ("This court begins by noting a serious doubt as to whether a vagueness challenge can be properly lodged against the Sentencing Guidelines."); *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999) ("Since there is no constitutional right to sentencing pursuant to the Guidelines, the discretionary limitations the Guidelines place on the sentencing judge do not violate a defendant's right to due process by reason of vagueness."); *but see United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997) (noting that the Ninth Circuit Court of Appeals applies the vagueness doctrine to sentencing provisions notwithstanding case law questioning the theoretical soundness of doing so); *State v. Wagner*, 194 Ariz. 310, 982 P.2d 270, 272-73 (1999).

able to identify a meaningful distinction between juvenile sentencing guidelines and adult sentencing guidelines in this context, the *Owens* court concluded *Rhodes* required it to apply the vagueness doctrine to the SRA's discretionary sentencing guidelines for exceptional sentences. *See Owens*, 95 Wn. App. at 631.

In reaching its conclusion that the vagueness doctrine applies to the Juvenile Justice Act of 1977's (JJA) disposition standards, the *Rhodes* court cited, without discussion, *Cicero v. Olgiati*, 410 F. Supp. 1080 (S.D.N.Y. 1976), *cited in Rhodes*, 92 Wn.2d at 759. In *Cicero*, the federal district court judge held that the vagueness doctrine precludes the delegation of unfettered discretion to an administrative agency to decide whether an inmate should be released from prison. *Cicero*, 410 F. Supp. at 1095. Likewise, under the Washington Constitution, the Legislature cannot delegate unfettered discretion to administrative agencies. *See Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 159, 500 P.2d 540 (1972). But "legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases[.]" *Lockett v. Ohio*, 438 U.S. 586, 603, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978). And the JJA, like the SRA, to the extent it delegates discretionary sentencing authority, grants that authority to judges, not administrative agencies. Therefore, *Cicero* does not support the proposition that sentencing directives to judges, such as the JJA and the SRA, are subject to the vagueness doctrine.

Nonetheless, *Rhodes* is Supreme Court precedent, and the State provides no meaningful basis to distinguish between juvenile sentencing guidelines and adult sentencing guidelines. Therefore, even though we are convinced that it is theoretically and analytically unsound to do so, as the *Owens* court concluded, we must apply the void for vagueness doctrine to the SRA's discretionary sentencing guidelines for exceptional sentences. *See Owens*, 95 Wn. App. at 631.

 "The test for vagueness of provisions in the SRA

is whether a person of reasonable understanding is required to guess at the meaning of the statute." *State v. Branch*, 129 Wn.2d 635, 648, 919 P.2d 1228 (1996). It is not necessary for a defendant to be able to determine with certainty what his sentence will be. *See Owens*, 95 Wn. App. at 632 (citing *State v. Rousseau*, 78 Wn. App. 774, 777, 898 P.2d 870 (1995), *review denied*, 128 Wn.2d 1011 (1996)). Because Wilson's vagueness challenge does not implicate the First Amendment right to free speech, he "bears the burden of proving beyond a reasonable doubt that the exceptional sentence statutes, as applied to his conduct, are unconstitutional." *Owens*, 95 Wn. App. at 631-32 & n.29 (citing *State v. Halstien*, 122 Wn.2d 109, 117-18, 857 P.2d 270 (1993)).

Applying the vagueness test to the fact of this case, the sentencing court entered a finding, which the record supports, that "[t]he degree of harm suffered by [P.G.] was substantially greater than the typical Assault in the Second Degree offense with regards both to the degree of harm inflicted upon her hand and by the psychological impact of the event." Clerk's Papers at 2. A person of reasonable understanding can comprehend that the SRA authorizes a sentencing court, in its discretion, to impose an exceptional sentence for a second degree assault conviction where the victim suffers injuries substantially greater or significantly more serious than typical for second degree assault. *See Jacobson*, 92 Wn. App. at 967-68. Therefore, we reject Wilson's due process vagueness challenge to the "seriousness of the victim's injuries" exceptional sentence aggravating factor as applied to him.

## III. Right to Appeal

 Wilson also contends that the Supreme Court's decision in *State v. Solberg*, 122 Wn.2d 688, 704-05, 861 P.2d 460 (1993), which rejected reviewing exceptional sentences for "proportionality" with prior published appellate decisions, violates his statutory and constitutional rights to appeal his exceptional sentence. *See* RCW 9.94A.210(4); WASH.

Const. art. I, § 22 (amend. 10). That is, he contends that *Solberg* bars this court from reviewing the sentencing court's subjective determination that his victim suffered injuries substantially greater or significantly more serious than typical for a second degree assault case. Appellant's Br. at 32 (citing *Solberg*, 122 Wn.2d at 709 (Madsen, J., dissenting); *State v. Perez*, 69 Wn. App. 133, 141-42, 847 P.2d 532 (1993) (Alexander, J., dissenting)). But the *Jacobson* court has already rejected this argument, noting that *Solberg* does not prevent an appellate court from reviewing a sentencing court's subjective determination that the defendant's conduct satisfies a particular aggravating factor; rather, "*Solberg* merely requires the reviewing court to apply the more deferential 'clearly erroneous' standard to the record rather than the 'as a matter of law' standard." *Jacobson*, 92 Wn. App. at 970-71. Therefore, the seriousness of the victim's injuries aggravating factor does not infringe upon a criminal defendant's statutory or constitutional right to appeal his or her exceptional sentence. *See id.* at 971.

## IV. Equal Protection and Due Process

Because an exceptional sentence based on the seriousness of the victim's injuries may be appealed like any other exceptional sentence and is subject to review under the "clearly erroneous" standard, Wilson's argument that this aggravating factor violates his right to equal protection under the law and due process of law also fails. *See Jacobson*, 92 Wn. App. at 968 (noting that "the procedural safeguard requiring sentencing courts to state their reasons for imposing exceptional sentences on the record—subject to appellate review—prevents arbitrary sentencing decisions").

## CONCLUSION

The sentencing court's stated reasons for imposing Wilson's exceptional sentence are legally adequate and are

supported by the record. RCW 9.94A.120 and RCW 9.94A-.390, the statutes authorizing exceptional sentences, are not unconstitutionally vague as applied to Wilson. The "seriousness of the victim's injuries" aggravating factor does not infringe upon Wilson's right to appeal his exceptional sentence, right to due process of law, or right to equal protection under the law. Accordingly, we affirm his exceptional sentence.

WEBSTER and AGID, JJ., concur.

Review denied at 139 Wn.2d 1018 (2000).