[No. 70669-7.   En Banc.]

Argued October 23, 2001.    Decided December 27, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES DWAYNE BORG, *Petitioner*.

*Clayton R. Dickinson* (of *Law Office of Clayton R. Dickinson*), for petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *John C. Hillman, Deputy*, for respondent.

OWENS, J. — James Dwayne Borg was convicted of six counts of unlawful possession of a firearm. The superior court imposed an exceptional sentence above the standard range because Borg committed multiple crimes, even though the "same criminal conduct" rule of RCW 9.94A.589[1] required the court to treat all six crimes as one for sentencing. Borg challenges his conviction on the

---

[1] The majority of chapter 9.94A RCW was recodified by LAWS OF 2001, ch. 10, § 6 to "simplify" its organization. The 2001 RCW Supplement is cited throughout.

ground of prosecutorial misconduct. He also asserts that in light of the same criminal conduct rule the fact he committed multiple crimes did not justify an exceptional sentence. The Court of Appeals affirmed, and we granted discretionary review. We affirm the conviction but reverse the sentence.

## FACTS

It is a crime in Washington for a person who has been convicted of a serious offense to possess a firearm. RCW 9.41.040. This statute applies to Borg because he was convicted of murder in 1980. This case stems from the discovery of two handguns and four rifles at his house.

On October 20, 1997, while Borg was on community supervision for another crime, Community Corrections Officer (CCO) Rochelle Wilkins went to Borg's house on a tip to look for guns. Two other CCOs and a Pierce County sheriff's deputy went too. Borg and his girl friend, Diana Beddoe, greeted the officers. When the officers first asked about the guns, Borg said he had none. But as they began searching the house, he admitted that there were some guns locked in a van parked nearby.

CCO Wilkins testified that when they asked for the keys to the van, Borg and his girl friend put on something of an act. Wilkins testified:

> [Beddoe] said—They needed to figure out where the keys were. She said: "Well, where are the keys?"
>
> [Borg] said, "I don't know where the keys are; you know where the keys are."
>
> And she asked him again: "Well, where are the keys?"
>
> He said: "I don't know where the keys are; remember, you know where the keys are."
>
> And she asked him again: "Well, where are the keys?" And then she says, "Oh."
>
> And then she went into that area to pick up the keys. So it was like a juggling back and forth.

Report of Proceedings (RP) at 178-79. Another CCO, Richard Hendricks, testified that when the keys came up there was "kind of like a big show, that, Well, yes, there's weapons on the property, but I don't know where the key is that goes for the van." RP at 223. Beddoe got the key and took CCO Hendricks out to the van, where he retrieved the guns.

At trial the State presented the testimony of the CCOs and members of Borg's family who had seen him with the guns when his mother's estate was distributed. The van was parked a few feet from Borg's property, on property that had belonged to his mother. The van was registered to Borg. He stipulated that he had been convicted of a serious offense, and the prosecutor published the stipulation to the jury.

Borg's defense was unwitting possession.[2] Beddoe testified for the defense that the guns and the van were hers. She said that when Borg's mother died, she picked up the guns from his mother's house, and took them to Dorothy Allen's, where she left them for a week. After that she locked them in the trunk of her son's Mustang. After her son died in a car accident on October 16, 1997, his friends told Beddoe that there was another key to the trunk of the Mustang. Because she could not find it, she locked the guns in the van on October 18 and hid the key. She said that she had bought two of the guns herself but had stored them at Borg's mother's house, and that she had bought the van from Borg without changing title.

In closing argument the prosecutor emphasized the undisputed facts and argued that Beddoe was not credible. Near the end of the prosecutor's rebuttal, she made the following argument, to which defense counsel objected:

[MS. ROBNETT:] What we do know is still undisputed. October 20th, 1997, the defendant's residence, his van, his property full of guns out of his mother's house. And the other

---

[2] The court gave an instruction on unwitting possession analogous to the pattern instruction given in drug possession cases. RP at 329.

thing we know is he's been convicted of a serious offense. This does affect credibility, and you know that Diana Beddoe—

MR. DICKINSON: I object to that last statement, your Honor.

THE COURT: Finish your statement.

MS. ROBNETT: You know Diana Beddoe's been convicted of a crime of dishonesty, criminal conspiracy.

THE COURT: Objection is overruled.

MS. ROBNETT: Thank you, your Honor. To commit a crime of dishonesty, it hinges on credibility. Consider the evidence, convict the defendant. Thank you.

RP at 357-58. The jury was sent to the jury room and went on break. Borg moved for a mistrial or a curative instruction on the ground the State had argued that Borg's stipulated prior conviction was relevant to credibility. The court read the proposed instruction into the record,[3] and denied both motions. The jury returned guilty verdicts on all six counts.

At sentencing the court found that the six counts were same criminal conduct under RCW 9.94A.589(1)(a) counting as one crime.[4] This meant that in calculating the offender score for each count, the other current convictions would not be counted as prior offenses as usual. Borg's three prior convictions were murder, unlawful possession of a firearm, and theft, making his offender score "3." The standard range sentence for each count was 31 to 41 months.

The superior court sentenced Borg to 41 months each on counts I and II to run concurrently. The court also sentenced him to 41 months each on counts III, IV, V, and VI, to run concurrently with one another but consecutively to

---

[3] " 'The defendant's prior serious offense is only an element of the charged offense and may not be considered by you for the credibility of either the defendant or his witnesses and you are to disregard argument by Counsel to the contrary.' " RP at 373.

[4] Laws of 1998, ch. 235, § 2 added subparagraph (c) to RCW 9.94A.589(1), which provided that offenders convicted of unlawful possession of a firearm shall serve consecutive sentences for each current conviction despite the same criminal conduct rule.

counts I and II. Borg's total sentence was 82 months, an exceptional sentence.[5] At the sentencing hearing the court stated that the basis for the exceptional sentence was that multiple offenses were involved. The court entered a written finding that multiple incidents of unlawful possession of a firearm are "more egregious than possessing only one firearm." Clerk's Papers at 27.

## ISSUES

First we address whether the prosecutor's remark in closing argument amounts to prosecutorial misconduct warranting a new trial. Because we find it does not, we also address whether the mere fact of Borg's committing multiple offenses justifies an exceptional sentence.

## ANALYSIS

■ *Prosecutorial Misconduct*. The trial court's ruling is reviewed for abuse of discretion and is entitled to some deference. *State v. Stenson*, 132 Wn.2d 668, 718-19, 940 P.2d 1239 (1997). The defendant bears the burden of showing that the conduct complained of was both *improper* and *prejudicial*. *Id*. If the prosecutor's conduct is shown to be improper, it is prejudicial if the appellate court determines there is a substantial likelihood the misconduct affected the jury's verdict. *Id*.

Borg claims the prosecutor argued that the stipulated prior conviction was relevant to the credibility of the defense. Clearly the 1980 murder conviction was not relevant to credibility. ER 609(b); *State v. Hardy*, 133 Wn.2d 701, 712, 946 P.2d 1175 (1997). Focusing on the words, "This does affect credibility," RP at 357, Borg contends the pronoun "This" can only refer backward, to his prior conviction. The record could be punctuated differently, joining the statement about credibility with the reference to Borg's

---

[5] Departure from the general rule requiring concurrent sentencing under RCW 9.94A.589(1)-(2) is an exceptional sentence. RCW 9.94A.535.

prior conviction. The State says the words "This does affect credibility" relate to the prosecutor's next sentence, referring to Beddoe's prior conviction.

On the written record we have, the pronoun "This" is far more likely to refer to Borg's conviction, which the prosecutor had just mentioned, than Beddoe's conviction. There is no way to fit the words "This does affect credibility" into the grammar of the sentence to which the State says they relate. We are not persuaded by the State's argument that this was a mere mistake of grammar and therefore not ground for a new trial. There are some things a prosecutor just cannot say, with grammar good or bad.

However, when reviewing a decision for abuse of discretion, we do not substitute our opinion for the trial court's. Appellate courts give deference to the trial court's firsthand view of alleged errors. The trial court is in the best position to survey the effect of a remark on the defendant's right to a fair trial. *See Stenson*, 132 Wn.2d at 719. The trial judge reviewed the transcript when Borg made his motion, and based on that, and his own recollection, concluded that the prosecutor was referring to Beddoe's credibility. We cannot say that this conclusion is so unreasonable that it is an abuse of discretion. We affirm Borg's conviction in spite of the record.

■ ■ *Exceptional Sentence.* A court may impose a sentence outside the standard range if "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. When reviewing an exceptional sentence, an appellate court asks three questions: (1) are the reasons supplied by the sentencing judge supported by the record; (2) do those reasons justify a sentence outside the standard range; and (3) was the sentence clearly excessive or too lenient. *State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990) (citing *State v. Nordby*, 106 Wn.2d 514, 517, 723 P.2d 1117 (1986)). The court applies the clearly erroneous standard to the first question, the de novo standard to the second, and the abuse of discretion standard to the third. *Pryor*, 115 Wn.2d at 450. Because Borg does not contend

that 82 months is clearly excessive, we restrict our consideration to factual and legal sufficiency.

The trial court's reason for imposing an exceptional sentence was that Borg committed multiple offenses. RP at 404. This reason is clearly supported by facts in the record. "The crucial question regarding this finding is whether or not it justifies an exceptional sentence, because not all sentences that seem too lenient are legally too lenient under the SRA [(Sentencing Reform Act of 1981)]." *State v. Stephens*, 116 Wn.2d 238, 242, 803 P.2d 319 (1991). The standard of review is de novo.

RCW 9.94A.535(2) is an illustrative list of aggravating circumstances justifying upward departure from sentencing guidelines. The State relies on RCW 9.94A-.535(2)(i),[6] which states that one aggravating circumstance is where:

> The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

The "multiple offense policy" comes from two general rules in RCW 9.94A.589(1)(a): one, the same criminal conduct rule for determining the offender score;[7] and two, the default use of concurrent sentences for multiple current convictions. This court has stated that the purpose of the multiple offense policy is to limit the consequences of multiple convictions stemming from a single act. *State v. Calle*, 125 Wn.2d 769, 781-82, 888 P.2d 155 (1995) (convictions for rape and incest stemming from single act). This aggravating factor was enacted at the same time as the same criminal conduct rule. LAWS OF 1984, ch. 209, § 24. RCW 9.94A.535(2)(i) thus gives the sentencing court discretion to impose an exceptional sentence in the specific case

---

[6] Codified at RCW 9.94A.390(2)(g) (1996) at the time of Borg's sentencing.

[7] RCW 9.94A.589(1)(a) defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."

where these general rules result in a presumptive range that is "clearly too lenient."

In *State v. Fisher*, 108 Wn.2d 419, 427-29, 739 P.2d 683 (1987), we held that it is appropriate to rely on RCW 9.94A.535(2)(i) for an exceptional sentence "when there is some *extraordinarily serious harm or culpability* resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range" (emphasis added). Our interpretation of RCW 9.94A.535(2)(i) in *Fisher* is based on the premise that the legislature wished to punish multiple convictions arising out of same criminal conduct as one, except in unusual or egregious cases. The purpose of RCW 9.94A.535(2)(i) was to give courts discretion to increase the sentence in those egregious cases. *See* DAVID BOERNER, SENTENCING IN WASHINGTON § 9.13(e), at 9-44 (1985) ("The addition of the limiting qualification 'clearly' to the term 'lenient' is evidence of [the Sentencing Guidelines Commission's] belief that such situations ought to be rare.").

Case law shows that reliance on RCW 9.94A.535(2)(i) is appropriate when the defendant's offender score exceeds the maximum "9." In *Stephens* the defendant was sentenced for eight current convictions of burglary. His offender score was "19." Had the guidelines been followed, the defendant's sentence would have been the same as if he had committed fewer crimes. The court held "that an exceptional sentence above the standard [Sentencing Reform Act of 1981] range may be justified when a defendant's multiple current convictions, combined with his high offender score, would otherwise result in there being no additional penalty for some of his crimes." *Stephens*, 116 Wn.2d at 240; *see also State v. Smith*, 123 Wn.2d 51, 55-56, 864 P.2d 1371 (1993) (offender score of "10"); *State v. Stewart*, 125 Wn.2d 893, 898-99, 890 P.2d 457 (1995) (multiple convictions would go unpunished where standard range exceeds the statutory maximum sentence). The Court of Appeals failed to distinguish those cases from Borg's case. In those cases culpability would have gone unpunished by the standard range

because the legislature had not provided for offenders with such high offender scores. In this case, Borg's offender score is "3," well within the statutory range, because the legislature has deliberately decided to calculate it that way.

Instead, the Court of Appeals cited the standard we enunciated in *Fisher*, but concluded that an exceptional sentence could be justified under RCW 9.94A.535(2)(i) without meeting that standard. The Court of Appeals relied on *State v. Owens*, 95 Wn. App. 619, 627, 976 P.2d 656, *review denied*, 138 Wn.2d 1015 (1999), for the proposition that the sentencing court need not find extraordinarily serious harm to impose an exceptional sentence under the clearly too lenient factor. But the *Owens* court held that the clearly too lenient factor did not apply in that case, since the multiple offense policy itself did not apply. *Owens*, 95 Wn. App. at 628. Therefore its qualification of *Fisher* is dictum.

The logic of *Fisher* is that use of RCW 9.94A.535(2)(i) is reserved for exceptional cases, since the general rule is that crimes constituting same criminal conduct be punished as one. Accordingly, the rule for using it to justify an exceptional sentence should distinguish exceptional from ordinary cases. The decision of the Court of Appeals defeats this logic. The presence of multiple offenses is the *only* basis here for relying on RCW 9.94A.535(2)(i). But more than one crime will be present *every* time the multiple offense policy is applied. Thus the Court of Appeals decision would bring every case applying the multiple offense policy within the terms of RCW 9.94A.535(2)(i). Every case involving the multiple offense policy would justify an exceptional sentence.

In its supplemental response brief the State explains the purpose of the multiple offense policy and RCW 9.94A.535(2)(i). There it admits that RCW 9.94A.535(2)(i) was meant to apply in some, but not all, cases:

> [T]he plain language of RCW 9.94A.[535(2)(i)] makes the legislative plan equally clear that sentencing judges are *at times* vested with discretion to impose separate sentences for

each current offense even if the offenses are same criminal conduct. . . .

. . . The plain language of the statutes is dispositive proof that the legislature did *not* intend for the sentencing court to be bound by RCW 9.94A.[589] *in every case.*

Suppl. Resp. Br. at 2-3 (emphasis added). The State is clearly saying that a sentencing court may *sometimes*, but not *always*, impose an exceptional sentence when multiple current convictions are the same criminal conduct. We agree, and so we must reverse.

## CONCLUSION

We see no reason to depart from our decision in *Fisher*. The general rule, that multiple current convictions constituting same criminal conduct count as one in calculating the offender score, must not be swallowed by the exception that a sentencing court may impose an exceptional sentence where the resulting presumptive range is clearly too lenient. We hold that where a defendant is sentenced for multiple current convictions which are same criminal conduct, an exceptional sentence is not justified by RCW 9.94A.535(2)(i) solely because those convictions number more than one. Instead there must be something extraordinary about the case. Borg was a murderous horse thief in rural Pierce County who had some old guns (he had inherited from his mother) locked in a broken down van. "Extraordinary" is the wrong word.

Although we find that the superior court did not abuse its discretion by denying Borg's motion for a new trial, we find that the exceptional sentence was not justified by the court's only stated reason. We therefore affirm in part, reverse in part, and remand the case for imposition of a sentence not inconsistent with our opinion.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.